Commonwealth ex rel. Stoner, Appellant, *v.*
Myers.

Argued September 10, 1962.  Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Kenneth F. Lee,* with him *Black and Davison,* for appellant.

*Jay L. Benedict, Jr.,* District Attorney, for appellee.

OPINION BY RHODES, P. J., November 15, 1962:

This is an appeal by relator from an order of the Court of Common Pleas of Franklin County dismissing relator's petition for a writ of habeas corpus.  A trial before a judge and a jury, on September 24, 1960, resulted in relator's conviction on both counts of indictment charging (1) burglary, and (2) larceny.  Sentence to a term of five to ten years was imposed on the burglary count and a similar sentence (later corrected) to run concurrently on the larceny count.

Relator took no appeal, but, on February 8, 1962, presented a petition for a writ of habeas corpus alleging, inter alia, that his conviction was based on evidence obtained through an illegal search and seizure under the ruling of the Supreme Court of the United States in *Mapp v. Ohio,* 367 U. S. 643, 81 S. Ct. 1684,

6 L. Ed. 2d 1081 (June 19, 1961). Answers were filed to the petition, and after argument the rule to show cause why a writ of habeas corpus should not be issued was discharged and the petition dismissed.

On this appeal by relator the only question raised is whether evidence submitted at relator's trial was obtained by means of an unconstitutional search and seizure.

The relevant facts are stated in the opinion of the court below as follows:

"The evidence at the trial indicated that the Marine Corps League clubhouse located in Chambersburg was burglarized on the night of March 18-19, 1960. The evidence showed that Stoner was a member of the League and had been in the habit of spending a good deal of time there in the evenings as had a number of other members, and that for a considerable period of time he had been employed at a fruit processing plant located in the immediate neighborhood of the League.

"From the evidence at the trial the jury could have found that defendant committed the burglary, that he, presumably with aid of confederates not yet discovered, carried the heavy safe from the clubhouse to a vehicle, and then transported it to a pond some ten miles away where it was later found in five or ten feet of water, the safe having been cut open by an acetylene torch, and some of the interior concrete or asbestos insulation having been accidentally deposited in gravel or powder form at the edge of the pond. Certain coins and particles of concrete material were offered in evidence along with testimony that some of this was found just outside relator's home and others near the pond and that this material was similar chemically to that remaining between the inner and outer steel wall of the safe as discovered. Over objection by defendant's counsel these particles of coin and concrete were admitted in evidence.

"At the conclusion of the trial no motion for a new trial or in arrest of judgment was filed, nor was any appeal taken within the lawful period."[1]

Search warrants had been secured by the officers after which they visited relator's home and knocked at the back door. No one answered, and while they were leaving they noticed a small pile of debris near the doorstep, a foot or two from the house. The pile contained some coins and a quantity of concrete dust. The concrete particles corresponded chemically with the concrete lining of the safe found in the pond. These concrete particles were admitted at the trial over the objection of defendant's counsel that they were the fruits of an illegal search and seizure.

The court below properly discharged the rule and dismissed the petition.

The decision in *Mapp v. Ohio* does not have any application to the present proceeding since the record indicates that the evidence introduced below was not obtained by a "search" but rather by alert observation of the police officers. As the court below properly held: ". . . it would be a wholesale departure from common sense and from serious concern for the preservation of the public peace and safety if police officers who enter an open driveway at a dwelling, and while knocking at the door, notice incriminating material lying on the ground, are forbidden to pick it up and use it, without going somewhere for a search warrant. . . . A search consists of a prying into or seeking out. Consequently by definition it cannot be an illegal search and seizure to take an object which is lying open and visible to the naked eye. People v. Exum, 382 Ill. 204, 47 N.E. 2d 56 (1943) ; 1960 (Winter) University of Illinois Law Forum, page 580, 'Search and Seizure.' " "In the ab-

---

[1] See *Commonwealth v. Clark*, 198 Pa. Superior Ct. 64, 67, 181 A. 2d 859; *Commonwealth v. Puntari*, 198 Pa. Superior Ct. 70, 72, 181 A. 2d 719.

sence of a physical entry into premises secured by the Amendment, there is no unreasonable search." *State v. Smith*, 37 N. J. 481, 181 A. 2d 761, 769 (June 4, 1962). In a similar case, where a policeman seeking to question a suspect concerning a robbery found possible objects of the robbery lying on the ground near the suspect's home, the court held: "Nor did mere observation constitute a 'search.' If an officer sees the fruits of crime—or what he has good reason to believe to be the fruits of crime—lying freely exposed on a suspect's property, he is not required to look the other way, or disregard the evidence his senses bring him. Law enforcement is difficult enough, without requiring a police officer to free his mind of clues lying flatly before him." *Ellison v. United States*, 206 F. 2d 476, 478.

If we assume that the acts of the officers amounted to a search and seizure, the search was supported by a presumptively valid warrant, and consequently it could not in any sense be an unreasonable and illegal search. Moreover, "It is permissible to seize things other than those described in the search warrant if they have a reasonable relation to the purpose of the search." *United States v. Joseph*, 174 F. Supp. 539, 545, affirmed 278 F. 2d 504, certiorari denied 364 U. S. 823. As the court said in the *Joseph* case (page 544 of 174 F. Supp., quoting *Harris v. United States* (1947), 331 U. S. 145, 154, 67 S. Ct. 1098, 1103, 91 L. Ed. 1399) : " 'This Court has frequently recognized the distinction between merely evidentiary materials, on the one hand, which may not be seized either under the authority of a search warrant or during the course of a search incident to arrest, and on the other hand, those objects which may validly be seized including the instrumentalities and means by which a crime is committed, the fruits of crime such as stolen property, . . .' " The concrete particles were traced to the stolen safe and were not merely evidentiary materials; they were in fact part

of the fruits of the crime. Under these circumstances, it would have been proper to allow the concrete particles, parts of the safe, into evidence.

We have indicated that the decision in *Mapp v. Ohio* should be interpreted as generally prospective in its application, since it would be unjustifiable retrospective lawmaking to convict the trial court of error in relying on the authority of decisions of the Supreme Court of the United States in force at the time of the trial. *Com. v. Mancini*, 198 Pa. Superior Ct. 642, 184 A. 2d 279; *Com. v. Clark*, 198 Pa. Superior Ct. 64, 69, 181 A. 2d 859; *Abel v. United States*, 362 U. S. 217, 235, 236, 237, 80 S. Ct. 683, 695, 4 L. Ed. 2d 668, 684, 685. See, also, *State v. Long*, 71 N. J. Super. 583, 177 A. 2d 609.

Whatever rule may evolve from the decisions as to the application of *Mapp v. Ohio* to pending appeals, it is the considered opinion of the judges of this Court that convictions which have been unappealed and have become final should not ordinarily be subject to collateral attack by habeas corpus on the ground that evidence alleged to have been illegally received was used at the trial. Any complaints by relator in regard to arrest and search were matters for defense, reviewable for possible error on appeal and not by habeas corpus. *Commonwealth ex rel. Spencer v. Ashe*, 364 Pa. 442, 445, 71 A. 2d 799; *Jones v. Attorney General of the United States*, 278 F. 2d 699, 701. It is well known that habeas corpus is not a substitute for an appeal and cannot be used to inquire into matters that should have been raised on motion for a new trial. *Com. ex rel. Coffman v. Keenan*, 198 Pa. Superior Ct. 80, 82, 182 A. 2d 288.[2]

---

[2] There is also persuasive authority in other jurisdictions that such question cannot be raised ordinarily by collateral attack, as by habeas corpus, long after the time for appeal has expired.

An excellent reason for the rule denying collateral attack on the basis of *Mapp v. Ohio* is set forth by Justice TRAYNOR in his concurring opinion in *In re Harris,* 16 Cal. Rptr. 889, 366 P. 2d 305, 310: "Illegally seized evidence [as opposed to involuntary confessions], on the contrary, is not made unreliable by the illegality of its seizure, and accordingly, to permit collateral attack because of its use would be justified only to deter unlawful police conduct. The right to challenge police conduct at the trial and on appeal is sufficient for that purpose." As mentioned in *Com. v. Mancini,* supra, 198 Pa. Superior Ct. 642, 184 A. 2d 279, the purpose of excluding illegally seized evidence is to secure recognition by the police of the citizen's right to privacy, and has primarily prospective application, whereas many other constitutional rights relate directly to the search for truth and the right of the accused to a fair trial.[3]

A state may determine its procedural requirements governing assertion and pursuance of direct and collateral constitutional challenges to criminal prosecutions. *Mapp v. Ohio,* supra, 367 U. S. 643, 659, note 9,

---

*United States v. Zavada,* 291 F. 2d 189; *Jones v. Attorney General of the United States,* 278 F. 2d 699; *Wilkins v. United States,* 258 F. 2d 416, certiorari denied 357 U. S. 942; *United States v. Scales,* 249 F. 2d 368, certiorari denied 356 U. S. 945; *Hall v. Warden,* 201 F. Supp. 639; *People v. Muller,* 11 N. Y. 2d 154, 227 N. Y. S. 2d 421, 182 N.E. 2d 99; *People v. Figueroa,* 220 N. Y. S. 2d 131; *People v. Oree,* 220 N. Y. S. 2d 121; *People v. Eastman,* 228 N. Y. S. 2d 156; *Petition of John T. Dirring,* 344 Mass. , 183 N.E. 2d 300; *Spence v. Sacks,* 173 Ohio St. 419, 183 N.E. 2d 363.

[3] The case of *Winkle v. Bannan,* 368 U. S. 34, 82 S. Ct. 146, 7 L. Ed. 2d 91, relied on here by relator, cannot be interpreted as a ruling that *Mapp v. Ohio* has retroactive application to the extent of permitting collateral attack on a conviction through habeas corpus, since there the court's order showed that the attorney general specifically requested that the case be remanded for consideration in the light of *Mapp v. Ohio.*

81 S. Ct. 1684, 1693, note 9, 6 L. Ed. 2d 1081, 1092, note 9; *United States ex rel. Gregory v. New York,* 195 F. Supp. 527.

The order of the court below is affirmed.