UNITED STATES of America ex rel.
Ralph STONER

v.

D. N. MYERS, Superintendent State Correctional Institution at Graterford.

Misc. No. 2556.

United States District Court
E. D. Pennsylvania.
July 23, 1963.

Kenneth F. Lee, Chambersburg, Pa., Eugene F. Waye, Saul, Ewing, Remick &

Saul, Philadelphia, Pa., Black & Davison, Chambersburg, Pa., for relator.

Jay L. Benedict, Jr., Dist. Atty. for Franklin County, Pa., by Blake E. Martin, Asst. Dist. Atty., for respondent.

LUONGO, District Judge.

This is a petition for a writ of habeas corpus alleging two main complaints about relator's state court trial wherein he was convicted on charges of burglary and larceny: (a) relator's prior criminal record was admitted without *initially* instructing the jury that its admissibility was limited to relator's credibility and not his guilt; and (b) the admission of evidence which relator alleges was illegally obtained.

(a) *Criminal Record:*

 The complaint based on the introduction of relator's criminal record does not raise a question of constitutional dimension and is not a proper subject for relief under federal habeas corpus. It is a matter which should have been raised in post trial motions and on appeal. Relator explains his failure to do so on the ground that the law as it then was afforded him no basis for relief, but that the law has since been completely changed by United States ex rel. Scoleri v. Banmiller, 310 F.2d 720 (3rd Cir. 1962).

Scoleri was a death case and is inapposite in the circumstances here existing. The Court of Appeals there emphasized the distinction between trials involving a potential death penalty and those with only a prison sentence as a possibility. The pronouncement in Scoleri was not intended for general and indiscriminate application, it was to be limited to its specific facts as the Court of Appeals expressly noted, at page 736, in denying a petition for rehearing:

"We have stated the foregoing to make it clear that every case which involves the delicate balance of comity between the courts of a state and those of the federal system must be considered and decided on its own precise facts. In the case at bar we did not lay down a rule of evidence for the Pennsylvania State tribunals. We handed down a judgment as to the fundamental fairness or unfairness of what was done in this particular case."

This limited scope was reiterated in United States ex rel. Rucker v. Myers, 311 F.2d 311 (3rd Cir. 1962) where even in a death case the Court of Appeals refused to apply Scoleri to the facts before it, stating at page 314 of 311 F. 2d:

"Courts, including our own, repeatedly sanction the admission of evidence for one purpose with a cautionary instruction that it may not be used for any other. E. g., United States v. Laurelli, 3d Cir., 1961, 293 F.2d 830, cert. denied, 1962, 368 U. S. 961, 82 S.Ct. 406, 7 L.Ed.2d 392. United States v. Stirone, 3d Cir., 1958, 262 F.2d 571, rev'd on other grounds, 1960, 361 U.S. 212, 80 S. Ct. 270, 4 L.Ed.2d 252. *In this very case, if the accused had testified in his own defense, evidence of prior crimes would have been admissible with an instruction that it be considered for the limited purpose of attacking his credibility.* Commonwealth v. Quaranta, 1928, 295 Pa. 264, 145 A. 89." (Emphasis supplied.)

In the instant case, unlike Scoleri, there was no objection on constitutional grounds to the admission of relator's criminal record, the request was that the jury be instructed that the criminal record be considered only as bearing on relator's credibility. Although the trial judge at first refused such an instruction, he later twice instructed the jury as to the limited purpose for which they could consider the criminal record. The first of these instructions was given when the trial judge sustained an objection to the prosecutor's erroneous argument to the jury that the criminal record could be considered as showing a probability of guilt. Again, in its charge to the jury,

the Court gave complete, clear and correct instructions on the limitations on the use of evidence of prior criminal convictions. Thus, apart from the fact that this is not a death case, the "fundamental unfairness" present in Scoleri is lacking here and this matter, which should have been raised on appeal, is not available to relator in these proceedings.

(b) Illegally obtained evidence:

Relator asks for relief primarily on his argument that his conviction was based on evidence illegally obtained in contravention of Mapp v. Ohio, 367 U. S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). I need not decide whether the Mapp ruling is retrospectively applicable to this case since I conclude that there was no unreasonable search and seizure.

At the hearing before me on July 9, 1963, counsel for relator stated that it was agreed between the parties that the record of the state court proceedings constitute the hearing on the petition for writ of habeas corpus. The record was then submitted and oral argument on the legal issues ensued. The record reveals the following facts:

In the early morning of March 19, 1960, the Marine Corps League Clubhouse in Chambersburg was burglarized and 50 cartons of cigarettes, a metal box containing $50 to $85, several bottles of liquor and a safe containing $600 were stolen. Thereafter, a truck driver named Mitchell called the wife of the steward of the Marine Corps League and told her that relator had previously approached him and asked him to participate in the crime. This information was communicated to the police who then interviewed Mitchell. Based on their investigation, the police obtained a warrant to search relator's premises for the cigarettes which had been stolen. The police then drove to defendant's house and went to the rear porch door. They entered the porch and knocked on the rear door of the house. There was no response and, after looking around the porch, they left. As they left, however, they noticed, about three feet from the rear porch door *on the ground* near the path, a pile of concrete particles and coins. These objects proved to be from the safe which was stolen, and it is this evidence that defendant claims was illegally seized.

Relator contends that the seizure was unlawful in two respects. First, that the warrant lists "cigarettes" as the object of the warrant and instead concrete particles and coins were seized. It is not necessary to decide whether such objects may properly be seized under a search warrant calling for "cigarettes", for the seizure of the concrete particles and coins was not pursuant to the warrant. The warrant was not served, a search pursuant to it was not undertaken, and a return of the warrant was not made. The warrant is significant only in that it explains the officers' presence on the premises, placing them *lawfully* there for the purpose of serving a presumptively valid search warrant.

Relator's second argument is that the warrant was issued without probable cause. His argument on that score is completely unfounded. He did not attack the warrant at the trial, nor did he, at the hearing before me, introduce any evidence of lack of probable cause. Cf. United States ex rel. Mancini v. Rundle, 219 F.Supp. 549 (D.C.E.D.Pa.1963). All I have before me is a warrant, regular on its face, which has not heretofore been attacked. If the question of probable cause must be resolved on the state of this record, I resolve it against relator. The record shows that: (a) relator was a member of the burglarized club; (b) he was among the very last of the patrons to leave on the morning in question; (c) before the burglary relator had outlined his plans to one Mitchell and had asked Mitchell to assist in its commission; and (d) Mitchell's story was communicated to the police and corroborated when the police found the stolen safe in a pond where relator had told Mitchell he planned to abandon it. These facts were all known to the police before

the warrant was obtained and, absent a showing to the contrary, presumably they were the basis for the issuance of the warrant. These facts constitute probable cause and more than adequately support the issuance of the warrant.

Assuming, arguendo, that the police were on relator's premises without a warrant, or were there with a warrant issued without probable cause, the seizure here would still be valid. Police Officer Armstrong testified that, based upon his investigation which revealed the facts set forth immediately above, he wished to speak with relator. His going to the premises to speak with relator was for a lawful purpose and his presence there was lawful. Ellison v. United States, 93 U.S.App.D.C. 1, 206 F.2d 476 (1953). The issue then would be whether or not police officers lawfully on premises may seize fruits of a crime lying about in the open. I agree with Justice Holmes in Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924) and with the ruling of the Superior Court of Pennsylvania in relator's case, Commonwealth ex rel. Stoner v. Myers, 199 Pa.Super. 341, 185 A.2d 806 (1962), that they may. Also see Ellison v. United States, supra, and United States v. Rogato, 39 F.2d 171 (D.C.M.D.Pa.1930).

The cases cited by relator do not compel a contrary result. In those cases, the officers did not have a warrant and they were not lawfully on the premises. Further, those cases did not involve evidence found lying out in the open, they involved evidence obtained by means of a search of a house, or apartment, or other building. Cochran v. United States, 291 F.2d 633 (8th Cir. 1961) (apartment); Work v. United States, 100 U.S.App.D.C. 237, 243 F.2d 660 (1957) (home); Hobson v. United States, 226 F.2d 890 (8th Cir. 1955) (home); Walker v. United States, 225 F.2d 447 (5th Cir. 1955) (barn); Brock v. United States, 223 F.2d 681 (5th Cir. 1955) (home); Hurst v. People of State of California, 211 F.Supp. 387 (D.C.N.D.Calif.1962) (home).

Relator's petition will be denied.