UNITED STATES ex rel. Victor LINK-LETTER, Appellant,

v.

Victor G. WALKER, Warden, Louisiana State Penitentiary, Angola, Louisiana, and the State of Louisiana, Appellees.

No. 20235.

United States Court of Appeals Fifth Circuit.

Sept. 12, 1963.

Rehearing Denied Oct. 29, 1963.

Tuttle, Chief Judge, dissented.

Victor Linkletter, in pro. per.

Scallan E. Walsh, Asst. Atty. Gen. of La., Baton Rouge, La., Jack P. F. Gremillion, Atty. Gen. of La., for appellees.

Before TUTTLE, Chief Judge, and RIVES and MOORE,* Circuit Judges.

RIVES, Circuit Judge.

This is an appeal from a denial of a writ of habeas corpus. On May 28, 1959, the petitioner, Victor Linkletter, was convicted in the criminal district court for the Parish of Orleans for the crime of simple burglary. This judgment was affirmed by the Louisiana Supreme Court February 15, 1960, and rehearing was denied on March 21, 1960. Petitioner is presently serving a nine-year sentence at hard labor in the Louisiana State Penitentiary.

On December 8, 1961, after the decision in the case of Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d

* Of the Second Circuit, sitting by designation.

1081, the Judicial District Court of the Parish of West Feliciana denied petitioner a writ of habeas corpus which was based on the same grounds as the present petition. An appeal of this ruling to the Louisiana Supreme Court was likewise unsuccessful and rehearing was denied. A petition for writ of certiorari was denied by the United States Supreme Court on June 18, 1962. Linkletter v. Walker, 1962, 370 U.S. 928, 82 S.Ct. 1570, 8 L.Ed.2d 507. This petition for habeas corpus was filed in forma pauperis in the Eastern District of Louisiana on July 10, 1962. The State concedes exhaustion of state remedies.

The main questions presented by this appeal are whether certain evidence used against petitioner was obtained by unlawful search and seizure, and if so, whether Mapp v. Ohio, supra, applies retroactively so as to subject this conviction, obtained prior to Mapp, to collateral attack.

Although there is some dispute as to the facts of the case, even the State's version suffices to show an illegal search and seizure. On August 16, 1958, a bar in New Orleans was burglarized and investigation revealed that entry had been gained through a window or skylight on the third floor. Burglar tools were found at the scene of the crime. Thereafter, on August 24, New Orleans police officers commenced a stakeout at the St. Charles Hotel, which commanded a view of the square, or block, in which the burglary had been committed. In the course of the surveillance, officers observed petitioner and another enter a building in this block. They were carrying two objects that appeared to be oxygen tanks. The building they entered afforded ready access to other buildings in the block. Petitioner was seen to open a window on the third floor of the building, climb out on the roof, and re-enter the building. He was shirtless and was wearing a pair of gloves. Shortly thereafter, as the two men left the building, they were arrested.

The arresting officers took the two men back to the third floor of the building and on the roof found an assortment of burglar tools and three loaded pistols. Petitioner was also searched and a key to his apartment was uncovered. Thereupon, he was taken by the police officers to his home, six to seven blocks away, and further evidence was uncovered. On August 26, officers again went with petitioner to his apartment and in addition went to his place of business, where other evidence was seized.

Petitioner's arrest was made without a warrant; and the search of his person, at the time of his arrest, and the searches of his residence and place of business, were all made without a search warrant. All of the above evidence was introduced against petitioner at his trial.

The district court held that the arresting officers had reasonable cause for arrest under Louisiana law and probable cause within the meaning of the Fourth Amendment. Thus the arrest without a warrant was held lawful. The court also held that "there can be no doubt" as to the validity of the ensuing search and seizure, since where the arrest is lawful, subsequent search and seizure incident to arrest is likewise valid.

Even if it is assumed that the arrest was lawful, we cannot agree that the searches of petitioner's apartment and place of business were incidental thereto. The right to search incident to arrest does not extend to places other than that of the arrest. Agnello v. United States, 1925, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145; Silverthorne Lumber Co. v. United States, 1920, 251 U.S. 385, 390, 40 S.Ct. 182, 64 L.Ed. 319; Staples v. United States, 5th Cir., 1963, 320 F.2d 817. In Agnello the defendant was arrested when he was in the home of another. While the defendant was being taken to the police station, other officers searched his home, which was several blocks distant from the place of arrest. The Court held this search to be unlawful. Applying that holding to the present case, the subsequent searches of petitioner's apartment and place of business without a warrant were likewise illegal.

■ At the time when the searches took place (August 1958) and when the petitioner's conviction became final (March 1960), the case of Wolf v. Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 was controlling. It had held that the Fourteenth Amendment did not impose upon the states the requirement that illegally seized property be excluded from evidence. However, on June 19, 1961, the Supreme Court overruled Wolf in Mapp v. Ohio, supra, thus making the exclusionary rule a constitutional requirement under the Fourteenth Amendment. Since petitioner timely objected to the introduction of this evidence and since exhaustion of state remedies has been conceded, the case before us squarely presents the issue of whether the rule in Mapp applies in a collateral attack on a pre-Mapp conviction. We hold that it does not.

It has been said that questions relating to the retroactivity of opinions "are among the most difficult of those which have engaged the attention of courts, state and federal." Chicot County Drainage District v. Baxter State Bank, 1940, 308 U.S. 371, 374, 60 S.Ct. 317, 319, 84 L.Ed. 329. Indeed, the retroactivity of Mapp is not a simple problem. Note, 25 Geo.B.J. 238, 242 (1962). As one author has stated, "The problem is not one of discovering a wholly satisfying or wholly logical solution, for none exists." Bender, "The Retroactive Effect of an Overruling Constitutional Decision: Mapp v. Ohio," 110 U.Pa.L.Rev. 650, 679 (1962). Ultimately, the solution must come from the Supreme Court. In the meantime, however, it is the obligation of the lower courts to endeavor to reach an authoritative, logical and just result.

■ Before proceeding further, it is necessary that the terms "retroactive" and "prospective," as used in this opinion, be defined. A purely prospective opinion would be one in which the new rule of law is limited to the future only and not even made applicable to the case before the court. See, generally, Great Northern Railway Co. v. Sunburst Oil & Refining Co., 1932, 287 U.S. 358, 53 S. Ct. 145, 77 L.Ed. 360. This is not the situation here, however, since the exclusionary rule in Mapp was applied to reverse Miss Mapp's conviction.[1] Also, the recent Supreme Court decision in Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), applied Mapp where the seizure and trial were before the Mapp decision but the direct appeal was not until after Mapp was rendered.[2] Thus, we are only now concerned with whether or not Mapp applies to a conviction which had become final before that case had been decided, and we accordingly limit the terms "prospective" and "retroactive." This opinion does not deal with the availability of collateral attack on a post-Mapp conviction.

We must first reach the question of whether a holding of prospective application, as used in this case, would be constitutional. The Supreme Court in Chicot County Drainage District v. Baxter State Bank, 1940, 308 U.S. 371, 374, 60 S.Ct. 317, 319, 84 L.Ed. 329, said:

> "The effect of the subsequent ruling as to invalidity [of an unconstitutional statute] may have to be considered in various aspects,—with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, or prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previ-

---

1. It has been argued that a federal court cannot render a purely prospective decision because of the case and controversy requirement of the Constitution. See Note, 71 Yale L.J. 907, 930–933 (1962).

2. The search and seizure occurred in July 1960. The California District Court of Appeals affirmed the conviction on August 29, 1961, and rehearing was denied on October 25, 1961. 195 Cal.App.2d 246, 15 Cal.Rptr. 767 (1961). Mapp was decided on June 19, 1961.

ous application, demand examination * * *. [I]t is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity [of statutes] cannot be justified."

And in Great Northern Railway Co. v. Sunburst Oil & Refining Co., supra, the Supreme Court held that a *purely* prospective decision of the Montana Supreme Court, overruling an earlier determination by that court, was not unconstitutional. The Supreme Court, through Mr. Justice Cardozo, stated that such a diversion in time of the effects of a decision, whether sound or unsound, is not a denial of any federal constitutional right—the federal Constitution has no voice on the subject. He stated that "never has [any] doubt been expressed" that a court may so rule, whenever injustice or hardship will thereby be averted. 287 U.S. at 364, 53 S.Ct. at 148, 77 L.Ed. 360.[3]

■ Thus constitutional, is there a philosophical barrier to the prospective overruling of a prior decision?[4] The traditional Blackstonian view was that a court does not pronounce a new law, but maintains and expounds the old one; when a decision has been overruled, the first one was merely evidence of the law, which had turned out to be erroneous evidence. See Note, 71 Yale L.J. 907, 908 (1962). That is, a judge *finds* the law; he does not *make* it. This theory, when applied to the problems before us, inevitably leads to the following analysis:

"It must be recognized that, since Weeks [Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652] and Wolf, there had been no change in the constitutional requirements of due process considered and found controlling in Mapp. If the protections are there now, were they not present when Wolf was decided and were they not present when Hall was tried, convicted and sentenced? An affirmative answer would appear to be inescapable."

Hall v. Warden, Maryland Penitentiary, 4 Cir., 1963, 313 F.2d 483, 495. But the more modern view, as espoused by Mr. Justice Cardozo and the legal realists, is that judges exercise a lawcreating function, although, of course, subject to the limitation of unreasonable "judicial legislation." See Note, 71 Yale L.J. 907, 911 (1962). We believe this is a more straightforward and realistic attitude than the fiction of Blackstone.[5]

---

3. Accord, e. g., State v. Smith, 37 N.J. 481, 181 A.2d 761, 762–765 (1962) (referring to Mapp case) ; see Note, 16 Rutgers L. Rev. 587, 588–91 (1962) ; cf. Safarik v. Udall, 1962, 113 U.S.App.D.C. 68, 304 F.2d 944, 950.

4. Sunburst also ruled that the choice of philosophical approach was not of constitutional concern. 287 U.S. at 365, 53 S.Ct. at 148, 77 L.Ed. 360.

5. Our view closely aligns with that of Mr. Justice Cardozo. As he stated, "The theory of the older writers [Coke, Hale and Blackstone] was that judges did not legislate at all. A pre-existing rule was there, imbedded, if concealed, in the body of the customary law. All that judges did, was to throw off the wrappings, and expose the statute to our view. *Since the days of Bentham and Austin, no one, it is believed, has accepted this theory without deduction or reserve, though even in modern decisions we find traces of its lingering influence.*" Cardozo, The Na-

ture of the Judicial Process, p. 124–5 (1921). (Emphasis added.)

"We must get away at one extreme from the notion that law is fixed and immutable, that the conclusion which the judge declares, instead of being itself a more or less tentative hypothesis, * * * has a genuine preexistence, that judgment is a process of discovery, and not in any degree a process of creation. This is the extreme of which Blackstone is the most eminent exponent. On the other hand, we must avoid the other extreme * * * —the conception of law as a series of isolated dooms * * *. Each extreme has a tendency, though for a different reason, to stifle the creative element." Cardozo, The Growth of Law 53–54 (1924).

To Cardozo the law was that body of principle and dogma which, with a reasonable measure of probability, may be used as the basis for judgment in pending or future controversies. Judges have the power to legislate, but not always the right. They have the right to legislate

It would hardly serve to quell the all too vociferous critics of the courts to tell them that the court did not make the law, but merely found what had been there all along. Surely the above quote from page 374 of 308 U.S., page 319 of 60 S.Ct., 84 L.Ed. 329 of the Chicot County case, supra, bears out the conclusion that the Supreme Court has taken the more modern approach. See Griffin v. Illinois, 1956, 351 U.S. 12, 26, 76 S.Ct. 585, 100 L.Ed. 891 (concurring opinion of Frankfurter, J.); Note, 16 Rutgers L.Rev. 587, 590 (1962).

With these constitutional and philosophical barriers aside, we may now proceed to a determination of the class of case into which the Mapp decision falls— prospective or retroactive. The first place to look, of course, is the Mapp opinion itself. It would seem that the very *least* that could be said is that the opinion is not clear as to whether it should be given retroactive effect.[6] It is our opinion that the decision in Mapp leaves the question open so that we may make our own determination as to retroactivity. Accord, Gaitan v. United States, 10 Cir., 1963, 317 F.2d 494, 497; Traynor, "Mapp v. Ohio at Large in the Fifty States," 1962 Duke L.J. 319; Bender, "The Retroactive Effect of an Overruling Constitutional Decision; Mapp v. Ohio," 110 U.Pa.L.Rev. 650, 671 (1962); Note, 25 Geo.B.J. 238 (1962);

Note, 16 Rutgers L.Rev. 587, 595 (1962); cf. Note, 71 Yale L.J. 907, 937 n. 164 (1962). True, some authors have pointed to certain language which is supposed to hint at, or show an awareness of, retroactivity.[7] They invariably rely on footnote nine of the majority opinion:

"9. As is always the case, however, state procedural requirements governing assertion and pursuance of direct and collateral constitutional challenges to criminal prosecutions must be respected. We note, moreover, that the class of state convictions possibly affected by this decision is of relatively narrow compass when compared with Burns v. Ohio, 360 U.S. 252, [79 S.Ct. 1164, 3 L.Ed. 2d 1209] Griffin v. Illinois, 351 U.S. 12 [76 S.Ct. 585, 100 L.Ed. 891], and [Commonwealth of Pa. ex rel.] Herman v. Claudy, 350 U.S. 116 [76 S. Ct. 223, 100 L.Ed. 126]. In those cases the same contention was urged and later proved unfounded. In any case, further delay in reaching the present result could have no effect other than to compound the difficulties." 367 U.S. at 659, 81 S.Ct. at 1693, n. 9, 6 L.Ed.2d 1081.

Also frequently pointed to is the following language in Mr. Justice Harlan's dissent.

"[T]he issue which is now being decided may well have untoward

---

when there are gaps in the law, but even then, the judge "is not free to innovate at pleasure. He is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles." Cardozo, The Nature of the Judicial Process, 141 (1921).

As to the location of the line of division between opinions which should be given retroactive effect and those which should be prospective only, Cardozo said: "I feel assured, however, that its location, wherever it shall be, will be governed, *not by metaphysical conceptions of the nature of judge-made law*, nor by the fetich of some implacable tenet, such as that of the division of governmental powers, but by considerations of *convenience*, of *utility*, and of the deepest sentiments of *justice*." Cardozo, The Nature of the Ju-

dicial Process, 148–49 (1921). (Emphasis added.)

6. E. g., Hall v. Warden, 4 Cir., 1963, 313 F.2d 483, 494; United States ex rel. Gregory v. People, N.D.N.Y.1961, 195 F. Supp. 527, 528; Bender, The Retroactive Effect of an Overruling Constitutional Decision: Mapp v. Ohio, 110 U.Pa.L.Rev. 650, 668 (1962); Note, 16 Rutgers L. Rev. 587, 588 (1962).

7. E. g., Allen, Federalism and the Fourth Amendment: A Requiem for Wolf in Kurland, 1961—The Supreme Court Review 1, 43–44 (1961); Morris, The End of an Experiment in Federalism—A Note on Mapp v. Ohio, 36 Wash.L.Rev. 407, 432 (1961); Redlich, 1961 Survey of New York Law—Constitutional Law, 36 N.Y.U.L.Rev. 1417, 1423 (1961).

practical ramifications respecting state cases long since disposed of in reliance on Wolf * * *." 367 U.S. at 676, 81 S.Ct. at 1703, 6 L.Ed. 2d 1081.

On the other hand, some courts have drawn implications of prospectivity out of the language in the opinion,[8] for instance, the use of such words as "then," "today," and "no longer." None of these arguments convinces us that the Court has made a conscious disposition of this issue.[9]

As yet, only a few lower court cases have reached the issue of Mapp's retroactivity. However, the Fourth and Tenth Circuits have already come to contrary conclusions. In Hall v. Warden, 4 Cir., 1963, 313 F.2d 483, the Fourth Circuit, en banc, held that Mapp does apply retroactively in a habeas corpus proceeding. The court pointed out that the intent of the Supreme Court is not clear from the opinion in Mapp. The court noted Mr. Justice Harlan's dissent and footnote nine of the majority opinion, but apparently did so only to refute the district court's finding of prospective intent. As already pointed out, the real crux of the Hall case seems to be a Blackstonian approach to the judicial process. It may be of some significance that Hall had been sentenced to death, for the court said:

"Perhaps the District Court may have been somewhat reluntant to be the first to apply Mapp retroactively, but it appears now that unless it is so applied and Hall's case is the first to be decided on that ground, the decision—at least for him—will be the last." 313 F.2d at 497.

In Gaitan v. United States, 10 Cir., 1963, 317 F.2d 494, the Tenth Circuit held that Mapp was prospective. The question arose in a more complex manner than in the instant case or the Hall case. Gaitan had been convicted of a federal crime prior to both Elkins v. United States, 1960, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669, and Mapp under the so-called "silver platter" doctrine. After the decision in Elkins, but before Mapp, he collaterally attacked the conviction by a proceeding under 28 U.S.C. § 2255, claiming Elkins was retroactive. This was denied on the ground that Elkins involved a rule of evidence only and could not be raised by means of collateral attack. After Mapp, Gaitan brought this section 2255 proceeding claiming Mapp retroactively made Elkins a constitutional ruling and that Elkins was retroactive. Mapp was held not to be retroactive. We agree with the Gaitan decision insofar as it rejects Hall and the Blackstonian approach: "The assertion that the later decisions [Elkins and Mapp] were always the law departs from reality. * * * On the one hand we have the idea that the latest interpretation of the Constitution is what the Constitution has always said and meant. On the other hand is the practical realization that the interpretation of the Constitution changes and has changed from time to time." 317 F.2d at 497–498. But we do not necessarily adopt all of the reasoning in the Gaitan case. For instance, we do not think that Patterson v. Colorado, 1907, 205 U.S. 454, 27 S.Ct. 556, 51 L.Ed. 879 or Sunal v. Large, 1947, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982, are relevant as to the retroactivity of Mapp. Those cases held that a conviction based on a nonconstitutional rule of law, which is later reversed, does not involve a lack of procedural due process and accordingly is not subject to collateral attack. Thus, even if the nonconstitutional rule applies retroactively, there is no post-conviction remedy because there has been no deprivation of any constitutional right. But if a constitutional decision such as Mapp applies retroactively, clearly there is a remedy for such a constitutional depriva-

---

8. E. g., People v. Figueroa, 220 N.Y.S.2d 131 (Kings Cty.Ct.1961) ; Hall v. Warden, D.Md.1962, 201 F.Supp. 639, rev'd 313 F.2d 483 (4 Cir., 1963).

9. "There is no reason not to consider it now, in a proper case. This ought to be done, if deep consideration is the proper basis for lasting judgment." Bender, supra note 5, at 671.

tion. Nor do we wish our holding to be as broad as Gaitan might be interpreted. A decision should be limited to prospective application only where the rigid tests which we have set out *infra* are met.

We have found only one other federal district court to have ruled on the retroactivity of Mapp. The Northern District of California in Hurst v. People, 1962, 211 F.Supp. 387, 391, applies Mapp retroactively in a habeas corpus proceeding. The court relied on Griffin v. Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, and Eskridge v. Washington, 1958, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269, which we discuss *infra*. The lower state courts in New York have consistently refused to apply Mapp retroactively in post-conviction proceedings. The first such holding was People v. Figueroa, 220 N.Y.S.2d 131 (Kings Cty.Ct. 1961), based on the language in Mapp and criticized in Redlich, "1961 Survey of New York Law—Constitutional Law," 36 N.Y. U.L.Rev. 1417, 1421–23 (1961). Pennsylvania has come to the same conclusion as New York, Commonwealth ex rel. Stoner v. Myers, 1962, 199 Pa.Super. 341, 185 A.2d 806; and an excellent concurring opinion by Judge Traynor indicates that California may do likewise. In re Harris, 1961, 56 Cal.2d 879, 16 Cal. Rptr. 889, 366 P.2d 305, 306.[10]

 The proper test for determining the retroactive effect which should be given to a decision has been well stated by a writer in the Yale Law Journal:

> "In deciding whether to give a new rule retroactive effect, a court to which the issue properly has been presented first should attempt to identify the purpose of the new rule, next should determine whether on balance those purposes will be served by general retroactive application of the new rule, and finally should de-

cide whether these purposes will be promoted by retroactive application of the new rule in the particular case before it."

Note, "Prospective Overruling and Retroactive Application in the Federal Courts," 71 Yale L.J. 907, 942 (1962). No determination should be made without giving careful consideration to the purposes of the new rule and to the equitable and effective operation of the legal system. Note, 71 Yale L.J. 907, 951 (1962); see Bender, supra note 5. Compare test suggested in Note, 16 Rutgers L.Rev. 587, 592 (1962).

The first step is to define the *newly created* rule. It is only the extent to which Mapp changed the existing law in which we are interested, for those matters which were already part of the law before Mapp apply to the petitioner through their own force and without the need of retroactive application. The only change brought about by the Mapp decision was that the exclusionary rule of Weeks v. United States, 1916, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, is now part of the Fourteenth Amendment. It is important to note that the right of privacy against unlawful search and seizure was already incorporated in the Fourteenth Amendment when Mapp was decided. The Court in Wolf v. Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, said:

> "The security of one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment—is basic to a free society. It is therefore implicit in 'the concept of ordered liberty' and as such enforceable against the States through the Due Process Clause. * * * Accordingly, we have no hesitation in saying that were a State affirmatively to sanction such police incursion into priva-

10. A number of states have held that Mapp applies retroactively to cases on appeal when Mapp was decided. E. g., Commonwealth v. Spofford, 1962, 343 Mass. 703, 180 N.E.2d 673; State v. Smith, 1962, 37 N.J. 481, 181 A.2d 761; People v.

Loria, 1961, 10 N.Y.2d 368, 223 N.Y.S. 2d 462, 179 N.E.2d 478. As already indicated, Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), would seem to have settled that question.

cy it would run counter to the guaranty of the Fourteenth Amendment. But the ways of *enforcing* such a basic right raise questions of a different order." (Emphasis added.) 338 U.S. at 27–28, 69 S.Ct. at 1361, 93 L.Ed. 1782.

The Court in Mapp merely added the exclusionary rule to the right of privacy recognized in Wolf: "Having once recognized that the right to privacy embodied in the Fourth Amendment is enforceable against the States, and that the right to be secure against rude invasions of privacy by state officers is, therefore, constitutional in origin, we can no longer permit that right to remain an empty promise." Mapp v. Ohio, 367 U.S. at 660, 81 S.Ct. at 1694, 6 L.Ed.2d 1081.

 Once the exclusionary rule is separated from the basic right to privacy itself, it becomes clear that the purpose of the exclusionary rule is to enforce the right of privacy as a deterrent. Mapp explicity held this—

"To hold otherwise is to grant the right but in reality to withhold its privilege and enjoyment. Only last year the Court itself recognized that the purpose of the exclusionary rule 'is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.' Elkins v. United States, supra, at 217." 367 U.S. at 656, 81 S.Ct. at 1692, 6 L.Ed.2d 1081.

Thus the exclusionary rule's purpose of deterrence, unrelated in any way with actual guilt or the probative value of the evidence, has been recognized by the writers. See Traynor "Mapp v. Ohio at Large in the Fifty States," 1962 Duke L.J. 319, 320, 341; Bender, supra note 5, at 660–61; Note, 71 Yale L.J. 907, 942 (1962); Note, 16 Rutgers L.Rev. 587, 593 (1962). It might be argued that, following Mr. Justice Black's concurring opinion, the reason for the exclusionary rule is to prevent unfairness at trial— the same unfairness involved in self-incrimination. This is based on Mr. Justice Black's theory that the Fourth Amendment must be considered along with the Fifth Amendment, which together produce the exclusionary rule in question. See Boyd v. United States, 1885, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. We reject such an argument. In the first place, the majority opinion does not rely on the Fifth Amendment or self-incrimination, nor did Weeks; and, in the second place, the exclusionary rule of the Fifth Amendment does not apply through the Fourteenth. Adamson v. California, 1947, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903. The majority opinion did not mention Adamson, much less overrule it. See Bender, supra note 5 at 664–68; cf. State v. Smith, 37 N.J. 481, 181 A.2d 761, (1962); Mapp v. Ohio, 367 U.S. at 657, 81 S.Ct. at 1692, 6 L.Ed.2d 1081.

It might be argued that since the majority opinion analogized evidence received in an unlawful search and seizure with a coerced confession, see 367 U.S. at 656–657, 81 S.Ct. at 1692, 6 L.Ed.2d 1081, the Court was recognizing an inherent unfairness, rather than deterrence, as a reason for preventing the use of unlawfully seized evidence. Cf. Mapp v. Ohio, 367 U.S. at 683–685, 81 S.Ct. at 1706, 1707, 6 L.Ed.2d 1081 (dissenting opinion). But it can effectively be argued that the purpose of excluding a coerced confession, even assuming it is reliable evidence, is likewise the deterrence of lawless police action. See Traynor, 1962 Duke L.J. at 325–26 n. 18.

The next step deals with whether the purpose of the rule will be served by retroactive application:

"Would the release from prison of every person whose conviction was based on illegally seized evidence have any effect in deterring unconstitutional searches? Assuming a finding of some deterrent effect, would it be substantial enough to outweigh the undesirability of reversing the convictions of many assumedly guilty prisoners?"

Note, 71 Yale L.J. 907, 942 (1962). The deterrent effect of retroactively applying Mapp will be slight, if any. The

prospect of having illegally seized evidence excluded from a particular trial will deter officers far more than the wholesale reversal of past convictions. Deterrence, itself, is a particularly prospective purpose. Bender, supra note 5, at 661–62. And on the other side of the scale, "to place at the disposition of the guilty an extraordinary remedy designed to insure the protection of the innocent would be to invite needless disruption in the administration of justice." Traynor, 1962 Duke L.J. at 341; see Note, 16 Rutgers L.Rev. 587, 596 (1962). This prospect has likewise been of concern to Judge Friendly of the Second Circuit, see Friendly, "Reactions of a Lawyer—Newly Become Judge," 71 Yale L.J. 218, 236 n. 105 (1962), for at the time Mapp was decided one-half of the states allowed illegally seized evidence to be introduced. 367 U.S. at 680, 81 S.Ct. at 1705, 6 L.Ed.2d 1081. We conclude that whatever slight deterrent effect, if any, Mapp might have if applied retroactively is insufficient to warrant the release of all of these presumably guilty prisoners.[11]

Several courts have pointed to Griffin v. Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, which ruled that it was a violation of the Fourteenth Amendment to deprive a person because of his indigency of a free transcript of his criminal trial in order to perfect an appeal. Hall v. Warden, 313 F.2d at 495; Hurst v. People, 211 F.Supp. at 395. In his concurring opinion, Mr. Justice Frankfurter argued that Griffin should be applied prospectively only. 351 U.S. at 25–26, 76 S. Ct. at 593–594, 100 L.Ed. 891. But in Eskridge v. Washington, 1958, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (per curiam), Griffin was applied retroactively in a habeas corpus proceeding concerning a 1935 conviction.[12] However, applying the test we have set out, the distinction between Mapp and Griffin becomes clear. The rule in Griffin is to provide fairness in procedure, not the prospective objective of deterrence. See Bender, supra note 5, at 672–73. Also, Griffin was not an overruling decision. The lack of precedent for prospective overruling in procedural due process cases might well be explained by the fact that few such rules would be found to be prospective under the test we have outlined. Indeed, Mapp is an unusual case. Cf. Note, 16 Rutgers L.Rev. 587, 593 (1962).

Some will no doubt say that to apply Mapp in the future and not in the past is unfair and undemocratic. See Note, 25 Geo.B.J. 238, 241 (1962). But the time of trial or of conviction is frequently of great importance to a defendant or litigant and is usually a reasonable ground for classification. It is true that it does not serve the purpose of deterrence to apply Mapp to a person whose appeal was pending at the time Mapp was decided. The reason for applying the rule is because if Mapp had not reached the Court first, these cases could as well have been the vehicle for overruling Wolf. See Bender, supra note 5, at 676–77. Their cases were not yet past history when Mapp was decided.

For the reasons stated herein, the district court's denial of the writ of habeas corpus is

Affirmed.

TUTTLE, Chief Judge (dissenting).

With much deference to the views of my colleagues, I must dissent. I agree that the search in this case was illegal. I also agree that in deciding Mapp v.

---

11. It should be pointed out that this decision is not merely based on the great administrative burden which would be placed on the courts should Mapp be applied retroactively, for prisoners as well as tort claimants have a right to crowd court dockets. Instead, this decision is based on the fact that such litigation would fail to serve the purpose for which the right was created.

12. Justices Harlan and Whittaker dissented. Compare Patterson v. Medberry, 1961, 368 U.S. 839, 82 S.Ct. 59, 7 L.Ed. 2d 39 (Memorandum of Harlan, J., on denial of certiorari), with Norvell v. Illinois, 1963, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456.

Ohio, supra, the Supreme Court did not give clear guidance to the trial or circuit courts which must now determine whether the relief afforded Mapp is to be made available to others in post-conviction proceedings where their trial and conviction had been finally disposed of before the Mapp decision. The choice that this Court has between giving retrospective as well as prospective effect to Mapp is a choice that has been made by two Courts of Appeal for different Circuits. The Tenth Circuit has held, in accordance with the decision of the majority here, that the Supreme Court, by implication, pointed the direction in prospective application only. See Gaitan v. United States, 317 F.2d 494. The Fourth Circuit, by an en banc opinion,[1] held that Mapp must be applied retroactively, Hall v. Warden, Maryland Penitentiary, 313 F.2d 483.

Both Courts recognized that the exclusionary rule now adopted by the Supreme Court is one required by the Constitution itself. "[T]he decision in Mapp scotched all notion that only *evidentiary rules* were involved." Hall v. Warden, Maryland Penitentiary, supra. In this situation I must align myself with what the majority opinion calls "the traditional Blackstonian view," which is "that a court does not pronounce a new law, but maintains and expounds the old one;" as contrasted with those who believe "that judges exercise a law creating function." I find myself fully in accord with the statement from Hall v. Warden, Maryland Penitentiary.

"It must be recognized that, since Weeks and Wolf, there had been no change in the constitutional requirements of due process considered and found controlling in Mapp. If the protections are there now, were they not present when Wolf was decided and were they not present when [Linkletter] was tried, convicted and sentenced? An affirmative an-swer would appear to be inescapable."

To me the most persuasive thought which leads me to conclude that the Supreme Court did not intend to restrict Mapp to prospective application is that it did not say so. As stated by the Court in the Hall case,

"It is significant that the Supreme Court did not specifically declare the effect of its decision was to operate only in the future, as it might have done."

With every deference to the views of my colleagues, my best judgment is that it will not do so.