**Daniel Edward McILVAINE and Jackie Krohn**

**v.**

**J. D. MIDDLEBROOKS, Acting Warden of Louisiana State Penitentiary.**

**Misc. No. 918.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

March 28, 1967.

Maurice R. Woulfe, New Orleans, La., for petitioners.

Jack P. F. Gremillion, Atty. Gen., Teddy W. Airhart, Jr., Asst. Atty. Gen., of Louisiana, Baton Rouge, La., for respondent.

WEST, District Judge:

Petitioners, Daniel Edward McIlvaine and Jackie Krohn, husband and wife,

have applied to this Court for the issuance of a writ of habeas corpus. McIlvaine is presently serving a fifteen year sentence in the Louisiana State Penitentiary after having been convicted by a jury of illegal possession of narcotics. Jackie Krohn is serving a seven and one-half year sentence after having been found, by the same jury, guilty of attempted possession of narcotics in violation of the law of Louisiana.

■ All available State Court remedies having been exhausted by petitioners, an evidentiary hearing was granted on the petition for habeas corpus filed in this Court. At that hearing counsel for petitioners conceded that McIlvaine was improperly before the Court because of the fact that this Court could not issue a writ of habeas corpus which would grant his immediate release since he is now serving a five year sentence on another narcotics charge. 1 Barron and Holtzoff Section 45; McGann v. Taylor, 289 F.2d 820 (CA 10–1961), cert. den. 368 U.S. 904, 82 S.Ct. 182, 7 L.Ed. 98 (1961); Turner v. State of Maryland, 303 F.2d 507 (CA 4–1962). Thus, with the consent of counsel, the petition of Daniel Edward McIlvaine for the issuance by this Court of a writ of habeas corpus must, of course, be denied. The remainder of this opinion concerns itself only with the application of the petitioner, Jackie Krohn.

The bill of information filed against petitioner in the State Court of Louisiana charged that she " *   *   * did willfully and unlawfully possess and have under their control narcotic drug, to-wit: Twenty (20) tablets of Morphine and Two (2) tablets of Dilaudid *   *   *." After trial by jury, petitioner was found "guilty of attempted possession of narcotics." She was thereafter sentenced to serve seven and one-half years in the Louisiana State Penitentiary.

Prior to the trial, petitioner's attorney filed a motion to suppress certain evidence which the State did, in fact, ultimately use against petitioner during her trial. This evidence consisted of the narcotics described in the bill of information.

After a lengthy hearing on the motion to suppress, the State Trial Court ruled adversely to petitioner and allowed this evidence to be introduced in the trial which followed. An appeal was taken to the Supreme Court of Louisiana where the conviction and sentence were affirmed. 245 La. 649, 160 So.2d 566. Writs were granted by the United States Supreme Court, and the judgment of the Louisiana Supreme Court was vacated and the case remanded for reconsideration in light of Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, McIlvaine v. State of Louisiana, 379 U.S. 10, 85 S.Ct. 90, 13 L.Ed.2d 23. The reason for the remand was that the judgment of the Supreme Court of the State of Louisiana which affirmed the conviction was based upon a finding that the search and seizure involved was made pursuant to the issuance of a valid search warrant and hence no illegal search and seizure was involved. The United States Supreme Court in the meantime had decided the Aguilar case which cast some doubt on the legality of the search warrant used in this case. Upon reconsideration by the Louisiana Supreme Court pursuant to this remand, it was conceded by the Court that in view of the decision in the Aguilar case the search warrant, which had been issued entirely on the strength of an affidavit presented to a magistrate by a police officer, and which affidavit was based only on information and belief rather than on facts and circumstances within the personal knowledge of the officer, was not a valid search warrant and would not sustain the validity of the search and seizure. However, the Louisiana Supreme Court then passed upon what it termed an alternative claim of the State of Louisiana made on the previous hearing but not considered by the Court at that time, i. e., that even though the search warrants were improperly issued, the search and seizure involved was incident to a legal arrest and consequently the fruits of the search and seizure were admissible in evidence. After considering this point, the Louisiana Supreme

Court concluded that the arrest of Jackie Krohn was a legal arrest and that the ensuing search and seizure was incident to that arrest and that hence the motion to suppress had been properly denied. 247 La. 747, 174 So.2d 515. Thereafter, writs were applied for and denied by the United States Supreme Court. 383 U.S. 921, 86 S.Ct. 898, 15 L.Ed.2d 676, 383 U.S. 954, 86 S.Ct. 1204, 16 L.Ed.2d 1204.

Plaintiff, in her petition to this Court, contends that the Louisiana State Courts were in error, and that she was, in fact, convicted on evidence obtained by an illegal search and seizure, there being no probable cause for her arrest. She further contends that there was no evidence whatsoever on which to base her conviction, and thirdly, that her character was improperly put at issue by the District Attorney in his opening statement to the jury, when she, the defendant, had not put her character at issue.

Since it is the opinion of this Court that the evidence used against petitioner Jackie Krohn was, in fact, the fruit of an illegal search and seizure, it will be unnecessary to pass upon her second and third contentions.

Since the facts pertaining to the issuance of the search warrants in this case are so analogous to the facts in the Aguilar case, and since the Louisiana Supreme Court recognized that in view of Aguilar the search warrants involved were improperly issued, the only question to be decided now is whether or not, absent a legal search warrant, the search and seizure involved was incident to a legal arrest. The facts leading up to this search and seizure were succinctly set forth by the Louisiana Supreme Court in its opinion at 245 La. 649, 160 So.2d 566, and since these facts are borne out by the transcript of the record in this case, they will be used as a basis for this opinion.

"About 11:00 o'clock on the morning of March 19, 1962, officers of the New Orleans police department, armed with search warrants for 3117 North Derbigny Street and for a certain Chevrolet automobile and a certain Ford automobile, and accompanied by state troopers, began a surveillance of the North Derbigny Street address, the home of the two defendants, and also began to watch 4717 Shalimar Drive, the residence of one O. S. Roberson. About 3:00 o'clock in the afternoon the police saw the defendant McIlvaine drive up to 3117 North Derbigny in a 1959 Ford and go into the house. At this time he was wearing gray pants and a gray work shirt. No one else was seen to leave or enter these premises during the rest of the afternoon. Officers watching the Shalimar Drive address observed a 1956 Chevrolet back out of the driveway at about 8:00 o'clock that night. The police followed the Chevrolet and soon saw that it was headed in the direction of the North Derbigny Street address. Officers stopped this car about one-half block from the North Derbigny Street address, and recognized its two occupants as Jackie Krohn, one of the defendants here, and O. S. Roberson. Both Jackie Krohn and Roberson were at this time placed under arrest by the police, the arrest being made without a warrant. After this arrest the officers went to 3117 North Derbigny with the search warrants for these premises which they had in their possession. One of the officers knocked on the door, and when the defendant McIlvaine appeared, the officer identified himself as such, placed McIlvaine under arrest, also without a warrant, and served him with the search warrant. Both Jackie Krohn and Roberson were brought to this dwelling, and the police made a search of the premises. In the bedroom the officers found draped over a chair the gray work shirt which McIlvaine had been wearing when he entered the home that afternoon. In the pocket of this shirt one of the officers found the narcotics described in the bill of information. McIlvaine admitted that the shirt was his, but denied any knowledge of the narcotics.

"The defendants Jackie Krohn and Daniel McIlvaine were living together as husband and wife at 3117 North Derbigny, where the narcotics were found. This was a half-double with only one bedroom, and no one lived there except the two defendants. Both defendants were shown to be users of narcotic drugs, and both had fresh hypodermic needle marks on their arms on the night of their arrest. Evidence adduced under the motion to suppress taken before trial disclosed that one or more members of the narcotic squad who participated in the operation knew the two defendants were narcotic addicts, having arrested or 'handled' them in this connection on other occasions, and that the officers were fully aware that the two defendants lived at 3117 North Derbigny Street."

As stated by the Louisiana Supreme Court "The evidence at issue, in order to be admissible, must be the product of a search incident to a lawful arrest, since the officers for the purposes of this consideration had no valid search warrant."

■ Assuming that the officers involved had probable cause to arrest Jackie Krohn, which this Court believes to be a fact established by this record, nevertheless, it must be concluded that the evidence later obtained by a search of her apartment does not constitute a search incident to this arrest. Where an arrest and search are made without a warrant, "The right to search incident to arrest does not extend to places other than that of the arrest. Agnello v. United States, 1925, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145; Silverthorne Lumber Co. v. United States, 1920, 251 U.S. 385, 390, 40 S.Ct. 182, 64 L.Ed 319;" United States ex rel. Victor Linkletter v. Walker et al., 323 F.2d 11 (CA 5—1963). As stated in Agnello, supra:

"The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody is not to be doubted. [Citing Cases.] The legality of the arrests or of the searches and seizures made at the home of Alba is not questioned. Such searches and seizures naturally and usually appertain to and attend such arrests. But the right does not extend to other places."

■ In the present case, petitioner was not arrested at the apartment where the search was made. She was arrested on the street, about a half block or more from the apartment, while in her automobile. The automobile was searched at that time. If we conclude that her arrest was made for probable cause, then there can, of course, be no question but that the search of her automobile at that time was a legal search. But the search of the automobile produced no evidence. Thereafter, petitioner was taken from her automobile to the apartment, some half block or more away, and the apartment was then searched. This was the search that produced the evidence used against her. Under the holdings of Linkletter and Agnello, this Court concludes that the search of the apartment was not incident to the arrest of this petitioner. Thus the motion to suppress should have been granted. While the Supreme Court of Louisiana may well have been correct in its conclusion that the search and seizure involved were incident to the arrest of McIlvaine, who was arrested in the apartment where the search and seizure was made, nevertheless I must conclude that the search and seizure was not incident to the arrest of the petitioner Jackie Krohn which took place some one-half block or more away from the apartment while she was in her automobile.

For these reasons, the application of petitioner Jackie Krohn for the issuance of a writ of habeas corpus must be granted, subject, of course, to the right of

**1008**

the State of Louisiana to re-try her if it sees fit, in accordance with law and within a reasonable time. It is unnecessary, in view of this holding, for the Court to consider the other contentions made by petitioner. Decree will be entered accordingly.