The PEOPLE OF the STATE OF CALI-
FORNIA, Robert A. Heinze, Warden,
et al., Appellant,

v.

Arthur Lee HURST, Appellee.

No. 18420.

United States Court of Appeals
Ninth Circuit.

Dec. 19, 1963.

Rehearing Denied Jan. 27, 1964.

Stanley Mosk, Atty. Gen., for the State of Cal.; Doris H. Maier, Asst. Atty. Gen., and Edsel W. Haws, Deputy Atty. Gen., Sacramento, Cal., for appellant.

Elke, Farella, & Braun and Jerome I. Braun, San Francisco, Cal., for appellee.

Before HAMLEY, JERTBERG and KOELSCH, Circuit Judges.

JERTBERG, Circuit Judge.

This is an appeal from an order of the district court granting relief in habeas corpus proceedings to Arthur Lee Hurst, a prisoner of the State of California. On October 8, 1959, Hurst was convicted in the Superior Court of the State of California in and for the County of Los Angeles on two counts of possession of narcotics other than marijuana (Calif. Health and Safety Code § 11500). On appeal to the District Court of Appeal of California the conviction was affirmed. 183 Cal.App.2d 379, 6 Cal.Rptr. 483 (July 29, 1960). A petition for habeas corpus was filed with the California Supreme Court and was denied on February 23, 1961. Appellee filed a petition for a writ of certiorari in the Supreme Court of the United States to review the order of the California Supreme Court denying habeas corpus relief. Certiorari was denied, sub nom. Hurst v. McGee, 368 U.S. 843, 82 S.Ct. 70, 7 L.Ed.2d 41 (October 9, 1961). Appellee filed the present petition for a writ of habeas corpus in the district court on June 18, 1962. The district court granted the writ on the ground that appellee's conviction was based upon evidence obtained by an illegal search and seizure, admission of which evidence violated appellee's rights under the Fourth and Fourteenth Amendments to the United States Constitution. Hurst v. People of the State of California, 211 F.Supp. 387 (N.D.Cal.1962).

Jurisdiction of the district court was invoked under the provisions of 28 U.S.C. § 2241(c) (3). Jurisdiction of this court rests in the provisions of 28 U.S.C. § 2253.

The district court's recitation of the facts is not challenged. We hereby adopt and quote that recitation from 211 F. Supp. at 389–390.

"At about 3:30 p.m. on May 18, 1959, Officer Garrahan of the Los Angeles Police Department received an anonymous telephone call at the Narcotics Division office in the Police Building. The person on the telephone stated, 'If you want to find two pounds of marijuana, look under the house at 309 West 83d Street,' and hung up. Garrahan testified that the voice sounded like that of a female, and that he had not heard it before.

"Garrahan, along with Officers Hanks and Grennan, drove to the above address. The building there located was a single-story duplex, with two residences, numbered 307 and 309.

"After parking in front of the duplex, the officers went directly to the residence at 309, whereupon they dispersed to appropriate locations surrounding it. Garrahan went to the front door; Hanks went to the rear of the building; and Grennan, to the side. As Garrahan approached the building, he saw a female through an open window, inside the house. On reaching the front door he knocked once, waited a few moments and knocked a second time, waited a period of time and knocked a third time. Anniece Jones (petitioner's co-defendant and common-law wife) then came to the door. Garrahan identified himself as a police officer. Anniece opened the door and he entered. Anniece did not refuse him permission to do so. He did not force his way into the house. Anniece did not say anything until he was inside. Once inside, Garrahan told Anniece that the officers had information that there was marijuana at the house and asked her if she would mind their looking around. Anniece replied, 'My husband is not here. He

will be home in about thirty minutes.'

"During this period of time, Grennan, at the side of the building, was looking through a screened window into the bathroom. He heard Garrahan knocking on the front door, and immediately saw Anniece enter the bathroom and empty something from an ashtray into the toilet and flush it. He did not, however, see what she flushed down the toilet. He immediately stated in a loud voice that Anniece had flushed something down the toilet, walked around to the front of the house, and went inside.

"During this same period of time, Hanks was at the rear of the house, where he noticed that the screen was off a 'vent hole' underneath the bedroom window of 309, and was alongside said hole. The vent hole was about 12 to 14 inches wide and about eight inches high. About six inches inside the hole he saw a large brown package. He could 'readily' see it, standing outside. He reached under the house and got the package, which was about a foot and a half long and six to eight inches in diameter. There were two brown paper bags inside, covering two plastic bags which, in turn, covered a large gray pillowcase. He felt of the pillowcase and felt 'a weedy, leafy material' inside one of the bags. He immediately knocked on the rear window and told Garrahan, 'The stuff is under the house; place them under arrest.'

"In the second bag there were two 'condoms' containing a white powder, wrapped in a handkerchief. In the package there was also what looked like a 'hypodermic outfit'. Hanks then entered the house and conducted a thorough search of it. In a purse which was sitting on a dresser in the bedroom he found a bag which contained numerous green seeds, three packages of cigarette papers and a gas bill made out to petitioner at 309 West 83d Street. He found another purse which Anniece said was hers, which contained two green seeds lying loose in the bottom. He also found two hypodermic needles and an eye dropper wrapped in a piece of paper in a 'poker chip box'.

"Petitioner arrived at the house in a Ford automobile about 4:45 p.m. As he walked toward the front door, Grennan and Hanks stepped out, identified themselves, and asked him who he was. Petitioner identified himelf, and was thereupon immediately placed under arrest. Hanks searched the car, and under the dashboard on the driver's side he found one brown paper cigarette.

"Officer Grennan had a conversation inside the house with petitioner in which petitioner stated he did not know anything about any marijuana in the house or underneath it. Petitioner admitted knowing that the two needles had been in the house, and claimed that they belonged to a couple of friends of his up north. Petitioner also admitted that he had been 'to the joint twice, once for marijuana and once for heroin', but denied that any of the 'stuff' belonged to him. He also disclaimed any knowledge about the cigarette found in the car.

"The package found under the house contained 20 grams of heroin, four pounds of marijuana and a hypodermic outfit. The seeds found in the purses were marijuana. The cigarette found in the car contained marijuana. All of these items were introduced into evidence over timely and appropriate objection by petitioner. The officers had neither a search warrant nor a warrant for petitioner's arrest.

"Both petitioner and Anniece took the stand in their own behalf. Their testimony consisted generally of denials of any knowledge of any of the narcotics which had been found."

Under recent Supreme Court decisions it is clear that the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment render inadmissible in a state criminal trial all evidence obtained as a result of an illegal search and seizure,[1] and that the legality of a state search and seizure is to be measured, for purposes of the exclusionary rule, by the "fundamental criteria" of the Fourth Amendment.[2] Since the exclusionary rule is itself a Constitutional dictate,[3] the question of illegal search and seizure by state authorities of evidence for use in a state criminal trial is cognizable by the federal courts on application for a writ of habeas corpus,[4] unless there is a state postconviction remedy still available to the prisoner at the time of filing the application in the federal court.[5]

The keystone question in the instant case remains unresolved by the Supreme Court: whether the Mapp and Ker cases are to be given retroactive effect where, as here, the search, the trial, the motion to suppress, the denial thereof, the conviction, and the exhaustion or expiration of remedies of direct review occurred prior to June 19, 1961, the date of the Supreme Court's decision in Mapp.

The circuit courts which have passed upon the question are in disagreement. Hall v. Warden, Maryland Penitentiary, 313 F.2d 483 (4th Cir. 1963), cert. den. sub nom. Pepersack v. Hall, 374 U.S. 809, 83 S.Ct. 1693, 10 L.Ed.2d 1032 (1963), held that retroactivity follows from the notion that courts but find and declare the law which has always existed but which may have eluded discovery in previous judicial efforts. Gaitan v. United States, supra, challenged the assertion that the later decisions were always the law as departing from reality. Gaitan denied relief in a proceeding under 28 U.S.C. § 2255 concerning pre-Elkins[6] and pre-Mapp "silver platter" evidence. In a habeas corpus proceeding involving a pre-Mapp state court conviction, the court in United States ex rel. Linkletter v. Walker, 323 F.2d 11 (5th Cir. 1963), denied relief and agreed with the Gaitan decision insofar as it rejected the Hall rationale.

The views of those who disfavor general retroactive application of Mapp are well presented in composite form in the Walker case. Briefly, the argument in that direction runs as follows: Absent both a Constitutional mandate and a clear expression of intent by the Supreme Court, determination of the question should be made by considering the impact of retroactive application upon furtherance of, the policy objective of the new interpretation and upon the practical administration of justice. The policy objective of the new interpretation is the effective guarantee of the Fourth Amendment right by removal of the incentive to disregard it. Retroactive application of Mapp will not further the purpose of deterrence but will have an adverse impact upon the practical administration of justice in that the "wholesale reversal of past convictions"[7] will follow therefrom, on the basis of a rule unrelated to actual guilt, which convictions were arrived at in solemn compliance with the law of the land as it then existed under Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).

1. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

2. Id.; Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

3. Mapp v. Ohio, supra, 367 U.S. at 655, 81 S.Ct. at 1691, 6 L.Ed.2d 1081: "We hold that all evidence obtained by searches and seizures in violation of the Constitution is, *by that same authority*, inadmissible in a state court." (Emphasis added.)

4. See, e. g., Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1950) [coerced confession]; Gaitan v. United States, 317 F.2d 494 (10th Cir. 1963) [search and seizure].

5. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

6. Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

7. United States ex rel. Linkletter v. Walker, supra, 323 F.2d at 19.

The problem is not strictly whether to retroactively apply the Mapp principles but where to draw the line. Miss Mapp's conviction was set aside as a consequence of the new interpretation. The pre-Mapp convictions of the petitioners in Ker v. California were scrutinized in terms of the new interpretation and found to be compatible therewith. See also Fahy v. Connecticut, 84 S.Ct. 229 (December 2, 1963). The search involved in the Mapp case occurred on May 23, 1957; the search involved in the instant case occurred on May 18, 1959. Appellee's trial, wherein the alleged illegally obtained evidence was admitted, occurred on October 8, 1959. The date of Miss Mapp's trial is not recited in either the opinion of the Supreme Court of Ohio or that of the United States Supreme Court. However, the Ohio Supreme Court affirmed Miss Mapp's conviction on March 23, 1960,[8] just over five months after appellee herein was tried. Between the time of Miss Mapp's trial and the Ohio Supreme Court's decision, an intermediate appeal was taken in the Ohio Court of Appeals[9] (unreported). We think it fair to say that Miss Mapp's trial probably occurred prior to Mr. Hurst's trial.

Of course the Mapp, Ker and Fahy decisions were made in direct review proceedings whereas the search and seizure issue here is presented by way of collateral attack in a habeas corpus proceeding. But the collateral nature of the instant proceeding does not provide a conclusive ground for denial of relief apart from the considerations advanced in opposition to general retroactive application of Mapp. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1952). The posture of the case serves simply to underscore the policy consideration against upsetting final judgments. We must therefore ask whether the considerations disfavoring general retroactive application of Mapp persuade us to hold that although an illegal search in Ohio vested the victim in 1957 with a Constitutional privilege to exclude, such a search in California did not vest the victim with such a privilege in 1959, and that although a trial in Ohio in which illegally obtained evidence was admitted was Constitutionally vitiated, a later trial in California in which such evidence was admitted was not Constitutionally vitiated.

We agree that the underlying policy objective of the doctrine of exclusion is to deter. The doctrine of exclusion is nevertheless a Constitutional privilege of the victim, and its status as such is not altered by identification of its purpose.[10] Care must be taken to see that unjustifiable distinctions are not drawn between individuals in enforcing such a privilege. A commentator who disfavors general retroactive application of the Mapp principles has said:

> "It would not show too much concern for an orderly and fair transition from one Constitutional rule to another to hold Mapp v. Ohio applicable to all prisoners tried after Miss Mapp as well as to all prisoners, no matter when tried, in whose cases the admissibility of the evidence was pending on direct review when Mapp was decided." Bender, The Retroactive Effect of an Overruling Constitutional Decision: Mapp v. Ohio, 110 U.Pa.L.Rev. 540, 677 (1962).

The argument that "wholesale reversal of past convictions" will fail to further the purpose of deterrence leans

8. 170 Ohio St. 427, 166 N.E.2d 387 (1960).

9. Id.

10. Mapp v. Ohio, supra, 367 U.S. at 656, 81 S.Ct. at 1692, 6 L.Ed.2d 1081:
   "In short, the admission of the new constitutional right by *Wolf* could not consistently tolerate denial of its most important constitutional privilege, namely, the exclusion of the evidence which an accused had been forced to give by reason of the unlawful seizure. To hold otherwise is to grant the right but in reality to withhold its privilege and enjoyment."

heavily upon the premise that retroactive application of the principles of Mapp will lead inevitably to a "wholesale reversal of past convictions." United States ex rel. Linkletter v. Walker, supra, 323 F.2d p. 19. We feel that in the context of the instant case the premise fails to support its burden. California criminal trials have, since 1955, been conducted in accordance with a judicially imposed exclusionary rule,[11] a fact which has repeatedly received commendation by the Supreme Court.[12] We are inclined to the belief that reversal of past California convictions will more likely be the exception rather than the rule of retroactive application of the Mapp principles. Appellants do not argue otherwise.

With respect to a flood of litigation resulting from retroactive application of Mapp, we agree with the sentiment expressed in the Walker case that the administrative burden placed upon courts is not a sufficient reason for denying relief since "prisoners as well as tort claimants have a right to crowd court dockets."[13] Moreover, we feel that relief should not be denied solely because "such litigation would fail to serve the purpose for which the right was created."[14] As was stated in State v. Smith, 37 N.J. 481, 483, 181 A.2d 761, 762 (1962), "we seek essential justice both to the individual and to the community." If it were obvious that a substantial detriment to the community would obtain as a consequence of granting relief here, attendant with a failure to promote the underlying purpose of deterrence, we might justifiably hold a different view. But as stated above, we do not perceive such a detriment in the context of the instant case.[15]

The Supreme Court has not articulated guidelines for analyzing the retroactivity problems which are forming the wake of recent landmark interpretations of the Due Process Clause of the Fourteenth Amendment.[16] We can, perhaps, be guided by what the Court has actually done. Eskridge v. Washington, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958) applied Griffin retroactively in a habeas corpus proceeding concerning a 1935 conviction. It has been said that the Eskridge case should not govern a case such as the instant one because the purpose of the rule in Griffin is to provide fairness in procedure[17] and is related to the actual guilt or innocence of the accused.[18] However, the exclusion of coerced confessions is predicated upon concepts of procedural fairness without regard to the verity or probity of the confession,[19] and therefore without regard to actual guilt or innocence of the accused. The Court in Mapp drew support for its de-

11. People v. Cahan, 44 Cal.2d 434, 282 P. 2d 905 (1955).

12. See Elkins v. United States, supra, 364 U.S. at 220, 80 S.Ct. at 1445–1446, 4 L. Ed.2d 1669; Mapp v. Ohio, supra, 367 U.S. at 651–652, 81 S.Ct. at 1689–1690, 6 L.Ed.2d 1081; Ker v. California, supra, 374 U.S. at 31, 83 S.Ct. at 1627–1628, 10 L.Ed.2d 726.

13. United States ex rel. Linkletter v. Walker, supra, 323 F.2d at 19, n. 11.

14. Id.

15. In an appendix to the Elkins opinion, 364 U.S. at 224–225, 80 S.Ct. 1447–1448, 4 L.Ed.2d 1669, the Supreme Court listed the states which had adopted by 1960 an exclusionary rule. From that list we note that of the states within the Ninth Circuit, Alaska, California, Hawaii, Idaho, Montana, Oregon and Washington exclude illegally seized evidence; Arizona and Nevada do not. The impact, if any, of our limited holding herein upon the practical administration of justice within the context of a similar case originating in one of the latter two states may be weighed if and when the occasion arises.

16. E. g., Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

17. United States ex rel. Linkletter v. Walker, supra, 323 F.2d at 19.

18. Traynor, Mapp v. Ohio At Large In The Fifty States, 1962 Duke L.J. 319, 340–41.

19. Rogers v. Richmond, supra (1960).

cision from the coerced confession cases. For this reason, some question exists to what extent the Mapp exclusionary doctrine is based upon the guarantee deemed implicit in the Due Process Clause of an accusatorial criminal procedure.[20] It is noteworthy that in the area of coerced confessions the Supreme Court has given *sub silentio* retroactive effect to decisions setting forth new standards for judging the nature of coercion.[21]

■ Scant as these cases may seem as authority for our position, there is no Supreme Court precedent which compels a holding that a Supreme Court decision overruling a previous interpretation of the Due Process Clause of the Fourteenth Amendment does not apply retroactively. We hold that appellee is entitled to the benefit of the doubt. So holding, we turn now to the merits of the matter.

■■ At no time during the investigation did the officers have warrants for the arrest or search of either appellee or his codefendant, Anniece Jones. In the absence of exceptional circumstances to dispense with the need of a search warrant, search of the premises at 309 West 83rd Street was legal only if made incident to the lawful arrest of either appellee or Anniece Jones.[22] To be lawful, the arrest, in the absence of a warrant therefor, must have been made upon probable cause, which exists where the officers have reasonable grounds for belief that the person to be arrested had committed or was committing a crime.[23] If a search was conducted which was not incident to a lawful arrest, any discoveries made thereby, or searches which followed therefrom, fall within the "fruit of the poisonous tree" doctrine.[24]

The California District Court of Appeal found there to have been probable cause for the arrest of Anniece Jones, based upon the following combination of circumstances: the anonymous tip; the length of time elapsed before Anniece Jones answered Garrahan's knocks at the front door; the assumption that she had seen the officers; the observation by officer Grennan of her emptying an ashtray into a toilet and flushing it; and the observations made by officer Hanks concerning the package under the house which were communicated to the other officers. The California District Court of Appeal recognized that each of these circumstances, considered in isolation, would be incapable of furnishing probable cause for the arrest of Anniece Jones, and that it was the combination of the officers' observations which justified re-

20. Mapp v. Ohio, supra, 367 U.S. at 656–657, 81 S.Ct. at 1692, 6 L.Ed.2d 1081 and 367 U.S. at 683, 81 S.Ct. at 1706–1707, 6 L.Ed.2d 1081 (disssenting opinion) ; The Supreme Court. 1960 Term, 75 Harv.L.Rev. 40, 155 (1961).

21. Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961). The district court had noted in that case that "Reck was convicted of this crime in 1936 and at *that* time the Due Proces Clause was not violated by the circumstances surrounding the making of his confessions. Today, the Due Process Clause is violated [under subsequently announced criteria]." United States ex rel. Reck v. Ragen, 172 F.Supp. 734, 745 (N.D.Ill. 1959). The district court refused to apply retroactively the new standards for much the same reasons advanced in opposition to retroactive application of Mapp. The Seventh Circuit affirmed on the ground that the confession was voluntary. United States ex rel. Reck v. Ragen, 274 F.2d 250 (7th Cir. 1960). The Supreme Court reversed on the ground that under the standards of the *subsequent* cases, the confession was coerced. See Note, Prospective Overruling and Retroactive Application in the Federal Courts, 71 Yale L.J. 907, 939 n. 173 ; Note, Collateral Attack of Pre-Mapp v. Ohio Convictions Based on Illegally Obtained Evidence in State Courts, 16 Rutgers L.Rev. 587, 592 n. 32.

22. Cohen v. Norris, 300 F.2d 24, 31–32 (9th Cir. 1962).

23. Ker v. California, supra, 374 U.S. at 34–35, 83 S.Ct. at 1630–1631, 10 L.Ed.2d 726.

24. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

liance upon the information given by the unidentified informer.[25]

■ It is clear that the observations made by officers Grennan and Hanks are indispensable links in the chain of circumstances furnishing probable cause for the arrest of Anniece Jones. The California court did not conclude otherwise and we see no reason to assume otherwise for the sake of argument. If the observations of either or both of those officers constituted a "search", the search was clearly illegal. It is true that under California law a search preceding an arrest may be "incident" to a valid arrest if probable cause for the arrest exists at the time of the search.[26] However, we find no suggestion that California law sanctions a rule which would allow the fruits of a search to justify a later arrest, and at the same time allow the search to be justified by the arrest. Such a rule is, of course, incompatible with the Fourth Amendment.[27] We need not discuss the propriety of the California "search before arrest" doctrine since that doctrine does not confer legality upon a search which furnishes the requisite probable cause for the subsequent arrest. We therefore feel that the critical issue is whether the activities of officers Grennan and Hanks constituted searches.

Upon arrival of the three officers at 309 West 83rd, officer Grennan repaired to the side of the residence. He had, in his words, "peered through a window which turned out to be the bathroom," at the time officer Garrahan knocked on the door. He remained at this vantage point and immediately after he heard officer Garrahan knock, he observed Anniece Jones enter the bathroom, empty something from an ashtray into the toilet and flush it. At this point officer Grennan had knowledge only of the anonymous tip. Whereas officer Garrahan testified that he had seen Anniece Jones in the house as he approached the front door, the record is silent whether officer Grennan knew that anyone was inside when he went to the side of the house. If officer Grennan's bathroom observation was a search, there was clearly no probable cause at that time for the arrest of anyone.

We feel that officer Grennan's bathroom observations constituted an unlawful invasion of privacy to the same extent as occurred in Brock v. United States, 223 F.2d 681, at page 685 (5th Cir. 1955), where it was said:

"Whatever quibbles there may be as to where the curtilage begins and ends, clear it is that standing on a man's premises and looking in his bedroom window is a violation of his 'right to be let alone' as guaranteed by the Fourth Amendment." Accord, see Britt v. Superior Court, 58 Cal.2d 469, 472, 24 Cal.Rptr. 849, 374 P.2d 817 (1962).

■ The district court correctly pointed out that the "plain view" doctrine[28] does not exonerate the activities of officer Hanks. All that was in plain view was a large brown package about six inches inside the exposed vent hole. Upon reaching into the vent hole and removing the package he observed that the package consisted of two brown paper bags which covered two plastic bags which, in turn, covered a pillowcase. The officer then felt the *pillowcase* and noted the weedy, leafy feel of the contents. There can be no claim that the feeling of the pillowcase occurred in a "plain view" observation since the pillowcase itself was surrounded by four outer wrappings, all of which were rolled into a cylindrical shape. But only upon feeling the contents of the pillowcase did

25. Rodgers v. United States, 267 F.2d 79 (9th Cir. 1959); accord Willson v. Superior Court, 46 Cal.2d 291, 294 P.2d 36 (1956).

26. Willson v. Superior Court, supra.

27. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

28. See, e. g. Ker v. California, supra.

officer Hanks shout that he had "found the stuff."

Appellants take the position that "at this point in the factual development the information supplied by the informant had been sufficiently corroborated to constitute probable cause for the arrest of the co-defendant and the subsequent arrest of the appellee." Appellants' Brief p. 26. There is a suggestion in the California District Court of Appeal opinion that probable cause existed when officer Hanks *saw* the package under the house, but appellants do not press this point here. It cannot be gainsaid that the touching of the pillowcase and the tentative identification of its contents were in fact steps which officer Hanks undertook prior to declaring that he had "found the stuff." Since he did not in fact make his declaration upon the bare visual observation of the package, we need not speculate whether he would have done so, or, if he had, whether a sufficient quantum of cause to be probable existed for the valid arrest of Anniece Jones.

■ Officer Hanks' activities constituted a search and seizure. The unconsented to entry upon the backyard of the premises was concededly a civil trespass. If officer Hanks had done no more, this fact would not be determinative without further facts tending to show the degree of privacy appellee enjoyed in that place. Polk v. United States, 291 F.2d 230 (9th Cir. 1961). But there was a further trespass when officer Hanks reached underneath the house itself in order to remove the package. That appellee is protected against such intrusion of his home is not open to question. Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). Appellants state: "A search implies a prying into hidden places for that which is concealed." We are unable to improve upon this statement in describing officer Hanks' discovery of "the stuff."

The order appealed from is affirmed.