**Clyde BATES, Petitioner,**

v.

**Fred R. DICKSON, Warden of San Quentin Prison, at San Quentin, California, Respondent.**

**Manuel Joe CHAVEZ, Petitioner,**

v.

**Fred R. DICKSON, Warden of the California State Prison at San Quentin, California, Respondent.**

Nos. 41325, 41326.

United States District Court
N. D. California, S. D.

Feb. 24, 1964.

36. E. g., see note 14, supra.

37. Brief of Trust Co., pp. 27–28.

Ruth Jacobs, San Francisco, Cal., for Clyde Bates.

Stanley Mosk, Atty. Gen. of Cal., for Dickson.

Gladstein, Andersen, Leonard & Sib‚ bett, San Francisco, Cal., for Manuel Chavez.

OLIVER J. CARTER, District Judge.

Petitioners have filed separate petitions for writs of habeas corpus challenging their custody by the respondent, Fred R. Dickson, Warden of the California State Prison at San Quentin. Petitioners are under the death sentence which has been stayed pending disposition of these petitions.

The prior history of these cases is summarized in Chavez v. Dickson, 9 Cir., 1962, 300 F.2d 683, cert. den. 371 U.S 880, 83 S.Ct. 151, 9 L.Ed.2d 116, rehearing den. 371 U.S. 931, 83 S.Ct. 295, 9

L.Ed.2d 239. It is sufficient to say here that they were jointly tried and found guilty of the crime of murder by arson, and the death penalty imposed in the Superior Court of the State of California, in and for the County of Los Angeles, and the judgment was affirmed on appeal, People v. Chavez, 50 Cal.2d 778, 329 P.2d 907, cert. den. 358 U.S. 946, 79 S.Ct. 356, 3 L.Ed.2d 353. Then started federal court habeas corpus proceedings raising points not raised here, but the points here could have been raised there. This Court denied the petitions without hearing, and was reversed as to two points, Chavez v. Dickson, 9 Cir., 1960, 280 F.2d 727. Hearings were held on the two points remanded, namely, (1) the accuracy of the transcription of certain tape recordings, and (2) whether the admission of certain gruesome photographs was a denial of due process, and the petitions denied. These rulings were affirmed on appeal, Chavez v. Dickson, 9 Cir., 1962, 300 F.2d 683, cert. den. 371 U.S. 880, 83 S.Ct. 151, 9 L.Ed.2d 116, rehearing den. 371 U.S. 931, 83 S.Ct. 295, 9 L.Ed.2d 239.

Petitioner Bates filed his second petition for habeas corpus in this Court in forma pauperis and in propria persona. He was joined in that petition by Chavez, stays of execution were issued, and then counsel appeared for both petitioners, and with leave of court counsel for Bates filed a supplemental petition for writ of habeas corpus, and counsel for Chavez filed an amended petition for habeas corpus. The parties stipulated that an order to show cause would be deemed to have been issued and properly served, and respondent Warden filed a return lodging a transcript of the trial proceedings, pleading the judgments of conviction, and asking that the petitions be dismissed. The parties stipulated that petitioners had exhausted their state remedies. Petitioners filed a traverse to the return.

Since these cases have been considered together in prior hearings and proceedings they will be considered together here, and they are hereby consolidated for purposes of all further proceedings. Although they will be considered together there are some separate problems raised. Most points are the same, or similar, but there are some points that apply to one petitioner only. The following are the similar contentions: that they were denied due process of law under the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution because illegally seized evidence and illegally taken accusatory statements were admitted into evidence against them at their trial, and that they had inadequate assistance of counsel in that counsel failed to object to the introduction of such evidence. Bates states two claims which apply to him alone, namely, (1) that he was denied effective assistance of counsel in that evidence of his hypersensitivity to alcohol was not presented, and (2) that the introduction into evidence of his four prior convictions of felonies was a denial of due process, and a denial of effective assistance of counsel. Chavez states one claim which applies to him alone, namely, that a trial juror made a post-trial statement that Chavez could not be believed because he was a member of a "rat-pack" gang, and could not tell the truth. He contends that this was a denial of due process because he did not have a fair trial, and the failure of counsel to pursue the matter in the state courts was a denial of adequate assistance of counsel.

While stipulating that the petitioners have exhausted their state remedies, respondent contends that the petitions fail to state any grounds for federal relief because petitioners have waived any constitutional rights they may have had in the matters claimed by failing either to raise the question at the trial or on appeal in the state proceedings.

The Court has read and reviewed the lengthy and voluminous record of the trial, some 3,600 pages, to determine if petitioners' claims can be disposed of on the record. There is no dispute about certain underlying facts. It is undisputed that both petitioners were represented by separate retained counsel dur-

ing the course of the trial in the state court, and on appeal with additional appointed counsel. In the federal court proceedings they have been represented by counsel of their own choosing, and different from counsel who represented them in the state trial. The record is also undisputed that no objection was made to the introduction of evidence on the ground that it had been illegally seized, and no objection to the introduction of accusatory statements on the ground that the statements had been illegally taken during the time petitioners were held in custody some six days without counsel and before being taken before a magistrate. Therefore there is no record in the state proceedings from which it can be determined whether there was an unlawful search and seizure in the manner claimed, or whether the accusatory statements were illegally taken as claimed. The stipulation that petitioners have exhausted their state remedies negates any implication that petitioners should again be required to present these claims of alleged federal constitutional violations to the state courts.

The critical question is whether petitioners are entitled to a plenary hearing on any or all of their claims. When Bates filed his original petition he entered into one of the fastest moving fields of law in existence today. Shortly after the stay of execution was issued the Supreme Court of the United States handed down the first two of a so-called "trilogy of 'guideline' decisions in which the Court has undertaken to restate the responsibilities of federal courts in federal post-conviction proceedings." (373 U.S. 1, 23, 83 S.Ct. 1068, 1081) The cases were Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, and Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. The third decision was Sanders v. U. S., 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148. These "guidelines" apply to federal post-conviction proceedings in review of both state and federal proceedings. The application of these "guidelines" has produced a tremendous volume of judicial writing in lower federal courts and in the appellate courts of the several states, and there has been a continuous defining and refining of the principles there stated.

■ One of the basic principles enunciated in Fay v. Noia, supra, was that waiver of federal rights was a federal question which may require independent determination of the question by the federal courts even though the state courts have found that there was a waiver. In that case the court said:

"Although we hold that the jurisdiction of the federal courts on habeas corpus is not affected by procedural defaults incurred by the applicant during the state court proceedings, we recognize a limited discretion in the federal judge to deny relief to an applicant under certain circumstances. Discretion is implicit in the statutory command that the judge, after granting the writ and holding a hearing of appropriate scope, 'dispose of the matter as law and justice require,' 28 U.S.C. § 2243; and discretion was the flexible concept employed by the federal courts in developing the exhaustion rule. Furthermore, habeas corpus has traditionally been regarded as governed by equitable principles. United States ex rel. Smith v. Baldi, 344 U.S. 561, 573, [73 S.Ct. 391, 397, 97 L.Ed. 549] (dissenting opinion). Among them is the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks. Narrowly circumscribed, in conformity to the historical role of the writ of habeas corpus as an effective and imperative remedy for detentions contrary to fundamental law, the principle is unexceptionable. *We therefore hold that the federal habeas judge may in his discretion deny relief to an applicant who has deliberately bypassed the orderly procedure of the state courts and in so doing has forfeited his state court remedies.*

"But we wish to make very clear that this grant of discretion is not to be

interpreted as a permission to introduce legal fictions into federal habeas corpus. The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461]—'an intentional relinquishment or abandonment of a known right or privilege' —furnishes the controlling standard. *If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits —though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default.* Cf. Price v. Johnston, 334 U.S. 266, 291, [68 S.Ct. 1049, 1063, 92 L.Ed. 1356]. *At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner.* Cf. Carnley v. Cochran, 369 U.S. 506, 513–517 [82 S.Ct. 884, 888–891, 8 L.Ed.2d 70]; Moore v. Michigan, 355 U.S. 155, 162–165 [78 S.Ct. 191, 195–197, 2 L.Ed.2d 167]. A choice made by counsel not participated in by the petitioner does not automatically bar relief. *Nor does a state court's finding of waiver bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question.* E. g., Rice v. Olson, 324 U.S. 786 [65 S.Ct. 989, 89 L.Ed. 1367]." (372 U.S. 438–439, 83 S.Ct. 848–849) (Emphasis added).

The challenge of the state acting through respondent is that petitioners waived their claimed federal constitutional rights either by failing to raise them at the trial, or on appeal from their conviction. It must be ascertained, then, whether their claims raise any question of violation of their constitutional rights and whether by their own conduct such rights were understandingly waived.

■ One of the basic principles stated in Townsend v. Sain, supra, is that a habeas corpus petitioner is entitled to an evidentiary hearing unless the merits of the factual dispute were solved in the state hearing supported by the state record as a whole under a procedure affording a full and fair hearing.

Upon the record in this case some of petitioners' claims can be decided without a hearing and some will require further hearing.

CLAIMS WHICH CAN BE DECIDED WITHOUT FURTHER HEARING

■■ Before discussing the previously stated claims of petitioners the Court must dispose of a possible remaining claim of Bates. He contends in his original petition, but not in his supplemental petition, that he was convicted of a crime not charged, murder by torture. This claim for release on habeas corpus is denied for failure to state a federal question because it is a matter of interpretation of state law which was considered and decided adversely to petitioner by the Supreme Court of California in People v. Chavez, 50 Cal.2d 778 at 788, 329 P.2d 907. As was pointed out in Chavez v. Dickson, 9 Cir., 1960, 280 F.2d 727 at 731, federal courts are bound by the interpretation of a statute of a state by its highest court. Petitioner's claim involves an interpretation of California Penal Code Section 189. The interpretation of this section was considered by the Court of Appeals for the Ninth Circuit when passing on other and similar claims of this same petitioner in Chavez, supra. It said:

"It is difficult to perceive how this court can consider whether the state construction of the statute is arbitrary and unreasonable without in effect reviewing the correctness of

the state court's interpretation of section 189. This, as noted in footnote 3, is not our function." (280 F.2d 731).

The two claims which apply to Bates alone do not require further hearing since the record at the trial presents an adequate basis for decision. These claims are (1) that he was denied the effective assistance of counsel in that evidence of his hypersensitivity to alcohol was not presented at the trial, and (2) that the introduction of four prior convictions of felonies was so prejudicial as to deny a fair trial and his counsel's failure to object was a denial of effective assistance of counsel.

### 1. Claim of Hypersensitivity to Alcohol

The gist of the claim is that Bates was a long time alcoholic, and, while under the influence of alcohol, he was prone to suffer "mental blackouts". He asserts that some thirteen witnesses, whose affidavits are attached to the petition, would so testify, and that his trial counsel was so advised and failed to present the evidence to the jury. He contends that the unused testimony was essential to his "only defense" that he could not have formed the requisite intent to commit the crime of murder because of intoxication. He testified at the trial that he was so intoxicated that he could not remember anything that occurred. He further contends that not only would the unused evidence have gone to the question of guilt or innocence, but it was also relevant to the question of penalty. Bates undoubtedly framed this claim under the holding of Brubaker v. Dickson, 9 Cir., 1962, 310 F.2d 30, a case decided a little more than three months before Bates filed his original petition, where it was held that it could be a denial of adequate assistance of counsel where available evidence of intoxication or mental condition due to excessive use of alcohol was not presented by counsel at the trial. The court said:

"Upon an examination of the whole record, we conclude that appellant alleged a combination of circumstances, not refuted by the record, which, if true, precluded the presentation of his available defenses to the court and the jury through no fault of his own, and thus rendered his trial fundamentally unfair. Appellant does not complain that after investigation and research trial counsel made decisions of tactics and strategy injurious to appellant's cause; the allegation is rather that trial counsel failed to prepare, and that appellant's defense was withheld not through deliberate though faulty judgment, but in default of knowledge that reasonable inquiry would have produced, and hence in default of any judgment at all. The omissions alleged by appellant 'were not mere mistakes of counsel or errors in the course of the trial. If true, they constituted a total failure to present the cause of the accused in any fundamental respect. Such a proceeding would not constitute for the accused the fair trial contemplated by the due process clause * * *.' It follows that appellant must have an opportunity to support the allegations of his petition, by proof, in a hearing before the District Court." (310 F.2d 38–39)

The court also said:

"None of the facts and contentions summarized above relating to the admissibility of the confessions and the bearing of appellant's mental condition and intoxication upon the issue of specific intent was presented to the court or jury either through cross-examination, by affirmative evidence, or in argument." (310 F.2d 36)

Both Bates and Brubaker make post-conviction claims that evidence of their mental condition and intoxication was not presented at the trial by counsel who were aware of the evidence, but there ends the similarity between the cases. The trial record in Bates literally reeks with the odor of alcohol. Counsel for

Bates, along with counsel for the other defendants, diligently pursued the question of intoxication by cross-examination of the prosecution witnesses as well as by testimony of defense witnesses. The following recitation of facts from the opinion of the Supreme Court of California is a fair, but conservative summary of the drinking feats of Bates and his co-defendants at the time in question:

"About 11 p. m. on April 4, 1957, six persons died as a result of a fire in a Los Angeles bar called the Mecca. Five were killed by carbon monoxide, and the death of the sixth was caused by asphyxia and burns. During the morning and afternoon of that day Bates and Brenhaug consumed considerable amounts of alcoholic beverages, including wine, beer, bourbon, and tequila. Early in the evening they met Chavez and Hernandez, who joined them in heavy drinking. * * * Hernandez, who was 18 years old, was asked for his identification card and said he did not have it. Chavez was also asked for his card and refused to show it. The bartender, believing Chavez and Hernandez might be minors, refused to fill their orders. The evidence appears to be without conflict that all of the defendants were under the influence of alcohol." (50 Cal.2d 783, 329 P.2d 910).

■ Counsel fully and forcefully argued the question of intoxication as it related to specific intent. His argument covered eighty pages in the transcript (Rep. tr. 2629–2710), and the greater portion of it was devoted to the evaluation of the evidence on intoxication, and its relation to the intent of the defendant. Counsel for the other defendants also fully argued the question of intoxication.

One cannot read this record without the impression that the issue of the capacity of Bates to form the necessary specific intent required to support a conviction of murder was vigorously, fully and fairly presented to the jury. This meets the test in Townsend v. Sain, supra. The fact that additional witnesses were available to further corroborate the testimony already introduced, or even to better present the issue, is no ground for the claim of constitutional denial of due process because of inadequate assistance of counsel. To again refer to the principal case on which Bates relies:

"This does not mean that trial counsel's every mistake in judgment, error in trial strategy, or misconception of law would deprive an accused of a constitutional right. Due process does not require 'errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.' Determining whether the demands of due process were met in such a case as this requires a decision as to whether 'upon the whole course of the proceedings,' and in all the attending circumstances, there was a denial of fundamental fairness; it is inevitably a question of judgment and degree." (310 F.2d 37)

Bates' claim of lack of adequate assistance of counsel in this respect is denied.

2. *Claim of Improper Use of Prior Felony Convictions*

■ Bates' claim of denial of due process in this respect is twofold. He first contends that the documentary evidence of prior convictions was not properly authenticated, and, secondly, that he was compelled to be a witness against himself when he was interrogated about his prior convictions on cross-examination after voluntarily taking the witness stand in his own defense. Bates places reliance on U. S. ex rel. Scoleri v. Banmiller, 3 Cir., 310 F.2d 720, cert. den. 374 U.S. 828, 83 S.Ct. 1866, 10 L.Ed.2d 1051. There the prior conviction had not been used for impeachment. Here the prior convictions were admitted with proper instructions for purposes of impeachment after the defendant had voluntarily taken the witness stand. This did not compel

him to be a witness against himself and it cured any defect of authentication if any there was. This also distinguishes the case from U. S. ex rel. Scoleri v. Banmiller, supra. This distinction is discussed in a later Third Circuit case, United States v. Myers, 3 Cir., 1962, 311 F.2d 311, 314:

> "In this very case, if the accused had testified in his own defense, evidence of prior crimes would have been admissible with an instruction that it be considered for the limited purpose of attacking his credibility. Commonwealth v. Quaranta, 1928, 295 Pa. 264, 145 A. 89. Courts frequently deplore such procedure. Judge Learned Hand has described it as 'the recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody's else.' See Nash v. United States, 2d Cir., 1932, 54 F.2d 1006, 1007, cert. denied, 285 U.S. 556, 52 S.Ct. 457, 76 L.Ed. 945. But, the procedure is interdicted 'only in the clearest cases of gross and easily avoided prejudice' to some party."

In Bates the trial judge very properly limited the use of prior convictions on cross-examination to the admission of convictions for the purpose of determining defendant's credibility. There was no constitutional deprivation cognizable in federal courts. In any event the issue was fully and fairly heard and determined by the trial court. This claim of denial of due process is denied.

■■ The claim of Chavez which can be decided without further hearing is his claim that he was denied due process because a juror made a post-conviction statement that Chavez could not be believed under oath because the jurors believed he was a member of a "rat-pack" gang, and that it was inadequate assistance of counsel because counsel did not "pursue" the matter. How the statement of the juror, or the alleged lack of pursuit by counsel, is a denial of due process or presents a federal question is not made clear. The incident out of which the issue arises occurred at the time of hearing on motions for a new trial and sentencing. As a ground for a new trial counsel for Chavez reported to the judge that the juror had made the statement to counsel just before the hearing and urged the statement as ground for a new trial. It is apparent from the record that, to that extent, counsel did pursue the matter, but it is equally apparent why he did not engage in further pursuit and why the trial judge did not consider it as grounds for a new trial. It is a well-established rule that post-trial statements of jurors will not be considered as a basis for impeaching the verdict of the jury. McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300; United States v. Crosby, 2 Cir., 1961, 294 F.2d 928, 948. There is no evidence that the juror in question or the jury as a whole received information from sources outside the trial. The petition does not allege any facts other than the alleged statement, and the statement alone does not raise a federal question. This claim is denied.

### CLAIMS WHICH CANNOT BE DECIDED WITHOUT FURTHER HEARING

The remaining claims apply to both petitioners, and, although the evidentiary background of the claim may be different as to each petitioner, the legal nature of the claim and the principles to be applied are the same. The essence of these claims is that both petitioners were denied due process of law because (1) illegally seized evidence was used against them, (2) illegally taken accusatory statements were used against them, and (3) they were denied adequate assistance of counsel in that counsel failed to properly object to the introduction of such evidence, or to raise the question on appeal.

The following are the facts alleged in the petitions as the basis for these claims.

1. *Illegal searches*

(a) *Bates:*

"In the early morning hours of April 5, 1957, petitioner was arrested in the driveway of his home; he was

not informed of the reasons for him being taken to the Police station. (Rep.Trans. 1297, line 4 to 1298, line 3; and 1313, lines 19–21). The police later returned to petitioner's home, without search warrant, and seized petitioner's automobile, driving it to the police station where it was minutely searched for whatever might be found (Rep.Trans. 1322, line 5–7).

"Officer Wolfer, of the Los Angeles Police Department, gave testimony at petitioner's trial as to the search conducted on the said automobile, to-wit; He took a piece of rubber floor mat, and a piece of padding from under the floor mat (Rep.Trans. 1152 to 1160). All of the testimony given by the officer was in relation to the illegal search of petitioner's automobile and the evidence taken therefrom." (p. 10 Bates Petition).

(b) *Chavez:*

" * * * petitioner alleges upon information and belief that sometime on the afternoon of April 5, 1957, while he was away from his home and prior to his arrest, two police officers forced their way into his home without a search warrant and without a warrant for his arrest and without any judicial process of any kind, and searched his home without any permission. Petitioner is informed and believes and therefore alleges that it was during the course of this unlawful search, and prior to his arrest, that the police officers discovered the jacket later used as People's Exhibit 2 in evidence against him.

"At the trial numerous witnesses purported to identify petitioner as having been present at the scene of the crime by virtue of their purported identification of said jacket. Without the use of this illegally obtained evidence, these witnesses would not have been able to place petitioner at the scene of the crime." (p. 5 Chavez Amended Petition).

(c) *Chavez Claim as to Illegal Bates Search:*

" * * * petitioner alleges upon information and belief that Bates' automobile was seized and impounded by the Los Angeles Police Department without a search warrant. Petitioner is informed and believes and therefore alleges that without a search warrant or a Court Order or judicial process of any kind, the police subsequently removed from the said automobile, by cutting, pieces of rubber floor matting and similar materials, which were later received in evidence on the trial against petitioner. At the trial prosecution witnesses testified to the fact that the matting and the other material so obtained were saturated with gasoline." (p. 6 Chavez Amended Petition).

In this respect Chavez contends that the material illegally seized from the Bates car was admitted against Chavez as well as Bates.

2. *Accusatory Statements*

(a) *Chavez:*

" * * * petitioner alleges that he and Bates were arrested on April 5, 1957. Also arrested on that date was one Oscar Brenhaug who was indicted with the others but never brought to trial. Hernandez was arrested on April 6, 1957. None of these persons were brought before a magistrate or other judicial officer until April 11, 1957.

"During the six days intervening between the time of the arrest and the time of the arraignment the defendants were exclusively in the custody of police officers who interrogated them and obtained from Brenhaug and Hernandez accusatory statements which were introduced in evidence at the time of the trial. Transcripts of said accusatory statements were read to the jury as People's Exhibits 63 and 65. These statements contained material which was highly

prejudicial to petitioner." (pp. 6–7 Chavez Amended Petition)

(b) *Bates:*

"Petitioner was arrested on April 5, 1957, and during the course of six days subsequent to the arrest, and that of other defendants, none of them were taken to a magistrate, or any other judicial officer until after the indictment of the Grand Jury had been returned. The first time that any of the defendants appeared before a judicial officer and were informed of their legal rights and given an opportunity to procure counsel was on April 11, 1957, at the time of their arraignment.

"While so in custody for six days and without having been advised of their legal rights, and without having been given an opportunity to consult counsel, accusatory statements were taken from them which were later used at the trial against them.

"These statements were obtained while petitioner and his co-defendants were exclusively in the custody of Police Officers for six days. Transcriptions of said accusatory statements were received in evidence as People's Exhibits 63 and 65 and were read to the jury and contained material which was highly prejudicial to petitioner and his co-defendants." (pp. 2–3 Bates Supplemental Petition).

The first inquiry is whether these facts, assuming them to be true, state a claim of deprivation of a federal constitutional right. In the claims of illegal search and seizure they do. Bates alleges a search of his automobile without a search warrant, Chavez alleges a search of his home without a search warrant, and both allege that the evidence seized was introduced into evidence against them, and that such evidence was prejudicial. These allegations, unexplained or uncontradicted, may state claims of illegal search and seizure in violation of the Fourth Amendment, and a violation of the due process clause of the Fourteenth Amendment. In the claims of illegally taken accusatory statements both petitioners base their claims on the same testimony at the trial, but, because of the nature of the statements and their relation to the petitioners separately, there is a variation in the facts, however, the legal effect of the claims is the same. For the purposes of determining whether a claim of constitutional proportions has been stated it is sufficient that petitioners allege that they and the other defendants involved in the accusatory statements were held in custody without advice of counsel for six days before being taken before a magistrate and advised of their rights and informed of the charges against them, that the accusatory statements were taken during this period of custody, that the statements were introduced into evidence against them, and that the statements were prejudicial. These allegations of fact, if unexplained or uncontroverted, may state claims of violation of the due process clause of the Fourteenth Amendment in that they may have been involuntary or coerced. It is to be noted that petitioners do not now challenge the use of these statements at the trial on the ground that their use was so prejudicial as to deny due process, even though admissible with appropriate instructions under California law. This aspect of claimed lack of due process with respect to the accusatory statements was fully considered and decided adversely to petitioners on appeal by the Supreme Court of the State of California in People v. Chavez, 50 Cal.2d 778, 790, 329 P.2d 907, and by the Court of Appeals for the Ninth Circuit on appeal from their first federal habeas corpus proceedings in Chavez v. Dickson, 9 Cir., 280 F.2d 727, 736. The present claims in respect to the accusatory statements appear to be an attempt to come within the exception there stated:

"Where there is no question concerning a federally significant external event such as the voluntariness of a confession or the knowing use of perjured testimony, trial court rul-

ings on the admissibility of evidence may not be questioned in a federal habeas corpus proceeding. See Eberhart v. United States, 9 Cir., 262 F.2d 421. The fact that certain evidence is prejudicial is immaterial if in fact it was admissible." (280 F. 2d 736)

 The present claim of petitioners is that the accusatory statements, although admissible on other grounds, were involuntary and, therefore, constitutionally inadmissible, and that such claim has not heretofore been heard or considered. Since the issue of whether the statements were made voluntarily was never raised at the trial, there is no record from which this issue can be determined. The claims of lack of due process because of inadequate assistance of counsel are based on the factual allegation in both petitions that counsel did not object to the introduction of the claimed illegally seized evidence and the claimed illegally taken statements. This appears to state a federal constitutional claim.

The principles of law which would permit a federal hearing of these claims, although obscure at the time these petitions were filed, are now becoming clear. However, it is to be noted that since the state trial in this case there have been decisions of the Supreme Court of the United States and the lower federal courts as to the duty of federal courts to examine into state criminal proceedings to ascertain if there has been a violation of federal constitutional rights in the state proceeding which overruled or modified what was then thought to be the controlling cases on the subject.

 In Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), it was held that evidence obtained by searches and seizures in violation of the Federal Constitution is inadmissible in a criminal trial in a state court, and Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), was overruled in this respect. It has since been held in this District and the Ninth Circuit that

under Mapp, supra, questions involving the legality of a search and seizure by state officers in a state prosecution are now properly subject to inquiry by federal courts through habeas corpus, and that the Mapp rule should be given retroactive effect. Hurst v. California, D.C., N.D.Calif., 1962, 211 F.Supp. 387, affirmed California v. Hurst, 9 Cir., 1963, 325 F.2d 891. There the Court of Appeals said:

"Under recent Supreme Court decisions it is clear that the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment render inadmissible in a state criminal trial all evidence obtained as a result of an illegal search and seizure, and that the legality of a state search and seizure is to be measured, for purposes of the exclusionary rule, by the 'fundamental criteria' of the Fourth Amendment. Since the exclusionary rule is itself a Constitutional dictate, the question of illegal search and seizure by state authorities of evidence for use in a state criminal trial is cognizable by the federal courts on application for a writ of habeas corpus, unless there is a state post-conviction remedy still available to the prisoner at the time of filing the application in the federal court."

After noting a conflict between circuits on the retroactive effect of Mapp, supra, the court said:

"Scant as these cases may seem as authority for our position, there is no Supreme Court precedent which compels a holding that a Supreme Court decision overruling a previous interpretation of the Due Process Clause of the Fourteenth Amendment does not apply retroactively. We hold that appellee is entitled to the benefit of the doubt."

As to the conflict between the circuits in addition to Hurst, supra, see Hall v. Warden, 4 Cir., 1963, 313 F.2d 483; Walker v. Peppersack, 4 Cir., 1963, 316 F.2d 119; Gaitan v. United States, 10

Cir., 1963, 317 F.2d 494; United States ex rel. Linkletter v. Walker, 5 Cir., 1963, 323 F.2d 11. In spite of the conflict the question is no longer open to interpretation by this Court, being bound by the decision of the Court of Appeals for the Ninth Circuit.

It is also now clear that involuntary or coerced confessions obtained in state court trials in violation of the Federal Constitution are cognizable in federal court habeas corpus proceedings when there has been no full and fair hearing in the state court on the question of whether the confessions were voluntary. Failure to appeal or object in the state court does not necessarily preclude federal court inquiry. In short, that is what Fay v. Noia and Townsend v. Fay were all about. In Townsend a hearing was required, and in Fay release on habeas corpus was granted. The whole trend of decision is that where federal constitutional rights are raised the federal courts are required to hold hearings, unless the issue can be decided from the record before the state court, or there is still some meaningful, available state remedy to test those rights. The following quotation from Thomaston v. Gladden, 9 Cir., 1964, 326 F.2d 305, is apropos:

"Those decisions require that we remand. If a transcript of the post-conviction hearing, stating the evidence upon which the findings of Oregon Circuit Judge Schwab are based, is available, the district judge should examine it, to determine whether the hearing met the standards laid down in Townsend v. Sain, supra, and whether the evidence supports the findings of the circuit judge. If not, the district court can hold a hearing on the matter. If, in the Oregon court, Thomaston received a full and fair evidentiary hearing, one in which the material facts were adequately developed, and if the state court's factual determination is fairly supported by the record, the district court need not itself hold an evidentiary hearing, although it may do so in its discretion. It is then for the district judge to apply federal constitutional standards."

See also: Pike v. Dickson, 9 Cir., 1963, 323 F.2d 856; McNatt v. Texas, 5 Cir., 1963, 323 F.2d 662; United States ex rel. Scott v. Davis, 5 Cir., 1963, 323 F.2d 663.

This case is not in the factual situation that the issues under discussion can be determined on the state record. See Ker v. California, 374 U.S. 23, 83 S. Ct. 1623, 10 L.Ed.2d 726 (1962) where the search was declared to be lawful on the state record, and California v. Hurst, supra, where the search was declared to be unlawful on the state record. Here, there is no complete state record because there was no objection which required the state trial court to explore search and seizure, or to consider whether the accusatory statementss were voluntary. However the state now refuses to examine into these questions or into the question of adequate assistance of counsel. It is, therefore, of no assistance to petitioners or controlling on the federal courts that the State of California has, and had at the time of the trial of this case in the state court an exclusionary rule on illegally seized evidence (People v. Cahan, 44 Cal.2d 434, 282 P.2d 905, 50 A.L.R.2d 513), and on coerced or involuntary confessions or admissions. (People v. Atchley, 53 Cal.2d 160, 346 P.2d 764). They are met with the unyielding fiat that their rights in this respect have been waived. Further hearing may disclose that the state is correct in this contention, but under the principles of Fay v. Noia, supra, it requires a hearing to make such a determination.

It is, therefore, ordered that the claims of petitioners for a writ of habeas corpus be, and the same are hereby denied, except as to those issues upon which a hearing will be held, and for which the writ will issue in accordance with the order of this Court made and entered February 20, 1964.